OPINION OF THE COURT
 

 Lawrence E. Kahn, J.
 

 In the above-captioned CPLR article 78 proceeding, petitioner seeks to require the respondent Public Service Commission (PSC) to abandon its policy of permitting public utilities to include charitable contributions as authorized expenditures in establishing utility rates. The instant litigation challenges the
 
 *511
 
 PSC’s policy upon the narrow issue that it violates petitioner’s 1st Amendment right of free expression and freedom of religion. The court has granted prior motions to add New York Telephone Company (Company) as a necessary party and further, to permit intervention by Central Hudson Gas and Electric Corporation. No answer has been served. All respondents have moved to dismiss the petition on various grounds, including lack of subject matter jurisdiction, Statute of Limitations, and failure to exhaust administrative remedies.
 

 Initially, it is clear that this court has subject matter jurisdiction to render a determination on the merits of petitioner’s allegations, and that the doctrine of exhaustion of administrative remedies is not a bar to the present litigation. Relief is sought in the nature of mandamus vis-a-vis the PSC. Petitioner seeks no relief against any specific utility, but rather, challenges a policy of the PSC which has been in effect since 1970. As such, there is no special expertise which would necessitate that this court defer to an administrative agency for a resolution of the dispute. Rather, resolution of the issue is grounded in constitutional considerations and thus certainly within the purview of this court. Similarly, a determination on the merits need not be avoided by dismissal for failure to exhaust administrative remedies. Petitioner raises only constitutional issues, and seeks no monetary relief. The submissions before the court are replete with reference to the PSC’s continuing adherence to the principle that inclusion of charitable contributions in operating expenses of a utility is acceptable for rate-making purposes. The policy was first articulated in case 25155, July 1, 1970, and repeated in the latest rate-making determination which is the subject of this challenge (case 228601). While there have been various individual objections from within the PSC concerning this policy, and introduction of proposed legislation to alter it, such a result has never been achieved. Given these realities, and the limitation of this litigation to constitutional claims, a dismissal for failure to exhaust administrative remedies would be the supreme example of invoking form over substance
 
 (Matter of First Natl. City Bank v City of New York Fin. Admin.,
 
 36 NY2d 87;
 
 Usen v Sipprell,
 
 41 AD2d 251).
 

 Finally, respondents seek dismissal premised upon petitioner’s failure to state a cause of action under either US Constitution 1st or 14th Amendment. In resolving this issue, it has long been recognized that “if a cause of action can be spelled out from the four corners of the pleading, a cause of action is stated and no motion lies”
 
 (Foley v D'Agostino,
 
 21 AD2d 60, 65, n 1). The test is twofold. The pleading must give notice of the transactions
 
 *512
 
 relied upon and assert sufficient material elements to constitute a cause of action
 
 {Jerry v Borden Co.,
 
 45 AD2d 344). Petitioners are to be afforded the benefit of every possible favorable inference (R
 
 ovello v Orofino Realty Co.,
 
 40 NY2d 633).
 

 While respondents have not yet answered, apparently the PSC allows inclusion of charitable donations as a cost of doing business in establishing rate structures for public utilities. This policy has existed since 1970. The amount is established pursuant to a formula premised upon pre-1970 corporate charitable donations, trended forward with an inflation factor. On or about June 22, 1984, the PSC, in determining a rate request for New York Telephone, allowed inclusion of charitable donations for 1984 in the sum of approximately $3,000,000. Petitioner alleges that he is a practicing Catholic and objects to funding of charities which support the right to an abortion. He further asserts that the above- denies him the rights of free expression and free exercise of religion, and most importantly, that the activities of the PSC constitute “state action” within the purview of 42 USC § 1983, and as such, violate his aforesaid 1st Amendment guarantees.
 

 Petitioner relies upon
 
 Abood v Detroit Bd. of Educ.
 
 (431 US 209), for the proposition that the policy of the PSC constitutes “state action.” Quoting Thomas Jefferson, the
 
 Abood
 
 court reiterated that “‘“to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical” ’ ” (p 235, n 31). While this court is enthusiastic in its indorsement of such a philosophy, nevertheless, it is applicable to the case at bar only if petitioner actually establishes that “state action” is present. State action “is present only where the state commits the act complained of or where a private entity commits an act ordinarily performed by the state or, is effectively mandated by the state to perform the acts complained of (see:
 
 Jackson v Metropolitan Edison Co.,
 
 419 U. S. 345, 351).”
 
 (Karp v Consolidated Edison Co.,
 
 Spec Term, NY County, May 24, 1984, calendar Nos. 71, 151.)
 

 The philosophy of corporate charitable contributions is rooted in the notion that a business should be an integral part of the community and benefits when it helps bolster the quality of life in the area it serves. Such contributions tend to enhance customer relations and attitudes. Business Corporation Law § 202 (a) (12) expressly provides that a corporation has the power “[t]o make donations, irrespective of corporate benefit, for the public welfare or for community fund, hospital, charitable, educational, scientific, civic or similar purposes, and in time of war or other national emergency in aid thereof.”
 

 
 *513
 
 The PSC’s motion to dismiss is supported by affidavits asserting that it does not compel contributions, nor does it designate a particular charity or the exact amount of any contribution. However, the petition alleges the converse and that while the PSC may not actively participate in determining a utility’s choice of charities in the first instance, this does not negate the presence of State action. Petitioner asserts that, in fact, each rate-making determination which approves a proposed charitable contribution must be viewed as a determination by the PSC, that the contribution is allowable as “relevant to the civic responsibilities of the public utility” and not “demonstratively imprudent.” As aforesaid, in 1970, the PSC determined for the first time to allow charitable contributions to be included as a necessary operating expense. “We are prepared to examine carefully claims for charitable contributions * * * and if the amounts are excessive in total or if the donees as a group are not relevant to the civic responsibilities of the public utility, we may disallow the contributions entirely. The level of contributions during the period in which they were not considered allowable expenses will serve as benchmark for the future.” Thus, the PSC’s reservation of authority is twofold. It reserves the right to determine the
 
 amount
 
 of appropriate corporate contributions. It also reserves control of the
 
 specific contribution,
 
 approving only those which it deems relevant to the utility’s civic responsibilities. Subsequently, it has also articulated a standard for disallowing charities which are “demonstratively imprudent.”
 

 “[A]cts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found in the ‘state’ acts than will the acts of an entity lacking these characteristics * * * the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.” 0
 
 Jackson v Metropolitan Edison Co.,
 
 419 US 345,351.) State action is present in each instance where the PSC applies its “relevant civic responsibility” test during the rate-making process. In such instances, the PSC is not merely affording a utility the choice of making a charitable contribution, but more significantly, and thereby creating a significant nexus, it is determining those charities which
 
 it
 
 feels comes within the standards which
 
 it has set
 
 for acceptable charitable giving. Thus, the PSC is not merely acquiescing in an otherwise acceptable business practice, but is engaged in an active supervisory role on a continuing basis.
 

 The petitioner alleges that respondents approve funding of charities who support practices which are violative of his reli
 
 *514
 
 gious beliefs. Assuming the truth of this allegation, as the court must at this stage of the litigation, it becomes apparent that such activity by the State would be prohibited by guarantees contained in US Constitution 1st Amendment. As such, the petition states a cause of action, thereby requiring denial of respondents’ motion.
 

 The motion to dismiss the petition upon the ground of lack of subject matter jurisdiction, failure to exhaust administrative remedies, that the proceeding is barred by the applicable Statute of Limitations, and that the petition fails to state a cause of action, shall be denied. All papers to attorney for petitioner, who shall submit an order in conformance herewith, with a copy of this decision annexed thereto. Respondents shall be granted 20 days in which to serve an answer. Thereafter, petitioner may renotice this proceeding on 10 days’ notice at any subsequent appropriate Special Term.