In the Matter of JOSEPH CAHILL, Respondent, v PUBLIC SER-
VICE COMMISSION et al., Appellants, and CENTRAL HUDSON
GAS AND ELECTRIC CORPORATION, Intervenor-Appellant.

Third Department, January 23, 1986

---

### APPEARANCES OF COUNSEL

*David E. Blabey (Leonard Van Ryn* and *Lawrence G. Malone* of counsel), for Public Service Commission, appellant.

*Gerald M. Oscar (John M. Clarke* and *Peter A. Scarpato* of counsel), for New York Telephone Company, appellant.

*Gould & Wilkie (Charles S. Biener* and *Walter A. Bossert, Jr.,* of counsel), for intervenor-appellant.

*Richard Emery* for respondent.

### OPINION OF THE COURT

HARVEY, J.

Petitioner is a customer of both respondent New York Telephone Company and intervenor Central Hudson Gas and Electric Corporation. In October 1984, he commenced the instant CPLR article 78 proceeding seeking an order directing respondents to cease the practice of passing along the cost of charitable contributions to customers. Petitioner also sought an order amending respondent Public Service Commission's (PSC) June 22, 1984 rate order to eliminate the PSC's recognition and authorization of New York Telephone's practice of passing along the cost of its charitable contributions to its customers as part of the rates it was authorized to charge.

Respondents elected not to interpose an answer, but rather moved for dismissal of the article 78 petition asserting objections in point of law (CPLR 7804 [f]). Respondents asserted that the court lacked jurisdiction since the subject matter

raised was within the exclusive purview of the PSC. Respondents also asserted that petitioner failed to exhaust administrative remedies and that the petition, which was predicated on a violation of petitioner's rights as set forth in US Constitution 1st and 14th Amendments, failed to state a cause of action.

■ Special Term denied respondents' motion in all respects (128 Misc 2d 510). That court properly noted its jurisdiction to entertain an article 78 proceeding which raises claims of a violation of constitutional rights as a consequence of actions taken by public regulatory bodies *(see, Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530, 533; *see also, Matter of Consolidated Edison Co. v Public Serv. Commn.,* 107 AD2d 73).

■ Respondents contended as one of their objections in point of law that petitioner failed to state a cause of action for article 78 relief. Since respondents elected not to submit an answer prior to moving for dismissal of the petition by setting forth objections in point of law as provided for in CPLR 7804 (f), their motion is one in the form of a CPLR 3211 motion addressed to the pleadings *(see, Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs.,* 63 NY2d 100, 102-103; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7804:7, p 507). Examining the petition and accepting the facts alleged as true, and considering them in the light most favorable to petitioner, as we must, we find that the article 78 petition states a claim for relief *(see, Matter of Board of Educ. v Allen,* 32 AD2d 985).

It is essential to the survival of this proceeding that the petition allege a violation of petitioner's 1st Amendment rights by some "State action". For, while the 14th Amendment provides protection of a citizen's constitutional rights from encroachment by State Government action, it has no applicability to private discriminatory or wrongful conduct *(Jackson v Metropolitan Edison Co.,* 419 US 345, 349-350). Petitioner states that the PSC established a policy in 1970 which permitted the utilities it regulates to pass along the cost of charitable donations to ratepayers. The PSC's "prime function * * * as a regulatory body, is [in separating] those costs which should be borne by ratepayers from those which are properly chargeable to shareholders" *(Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 51 NY2d 823, 825, *appeal dismissed* 450 US 961). The PSC is a creation of the Legisla-

ture (Public Service Law §§ 3, 4; *see, Matter of Consolidated Edison Co. v Public Serv. Commn.,* 47 NY2d 94, 102, *revd* 447 US 530). By alleging that the PSC adopted a policy which permitted the costs of charitable donations to be passed along to ratepayers, petitioner has adequately stated the threshold claim of "State action" *(Jackson v Metropolitan Edison Co., supra,* pp 349-350).

Petitioner goes on to allege in the article 78 petition that the policy promulgated by the PSC results in ratepayers' funds being directed to a variety of charitable causes without any notice to, or input by, those individuals. Petitioner also contends that donations made to specific charities are violative of his religious beliefs. Petitioner's claim for relief is that the PSC's policy constitutes unlawful State action since it has the end result of compelling an individual ratepayer to indirectly support an organization whose philosophy the ratepayer opposes on religious or other personal grounds. Accepting petitioner's allegations and construing them in his favor, we find that he has stated a cause of action which alleges a violation of his rights under US Constitution 1st and 14th Amendments *(Torcaso v Watkins,* 367 US 488; *see, Wooley v Maynard,* 430 US 705; *see also, Abood v Detroit Bd. of Educ.,* 431 US 209).

■ Respondents' contention that petitioner has failed to exhaust his administrative remedies does not present a bar to the court's entertaining the instant petition. Where, as here, a petitioner's claim is based solely on a constitutional challenge, the exhaustion of administrative remedies requirement is inapplicable *(Matter of Emery v LeFevre,* 97 AD2d 931, 932). The proceeding is timely since the nature of the relief sought by petitioner is to address an alleged continuing violation of his constitutional rights *(see, Matter of Burke v Sugarman,* 35 NY2d 39, 45).

LEVINE, J. (dissenting). In our view, under current State-action principles applied by the United States Supreme Court *(see, Blum v Yaretsky,* 457 US 991; *Rendell-Baker v Kohn,* 457 US 830; *Flagg Bros. v Brooks,* 436 US 149; *Jackson v Metropolitan Edison Co.,* 419 US 345), petitioner has failed to plead any violation of his 1st Amendment rights on the part of respondent Public Service Commission (PSC). State-action analysis begins with "careful attention to the gravamen of the plaintiff's complaint" *(Blum v Yaretsky, supra,* p 1003). The gravamen of the complaint in the instant case is found in

paragraphs 7, 8 and 9 of the petition. The constitutional deprivation complained of is that petitioner is being "compelled to support * * * charities * * * by means of including coerced contributions in his utility bills" (para 7); that the PSC *"permits* the New York Telephone Company and all New York utilities which it regulates to dispose of their charitable contributions extracted from their customers in any manner each utility determines without any protection for the interests of the customers" (para 8; emphasis supplied); and petitioner "has no alternative means of obtaining the basic utility services the New York Telephone Company provides him in his home geographic area" (para 9).

Nowhere in the foregoing key allegations, nor elsewhere in the petition, are facts pleaded which attribute the claimed constitutional deprivation to the PSC other than indirectly through its purely regulatory authority over respondent New York Telephone Company (NYT). Any invasion of petitioner's 1st Amendment rights directly results from the acts of NYT, a private corporation. It is NYT, and not the PSC, that adds the proportionate share of the cost of its charitable donations to petitioner's telephone bill and threatens petitioner with discontinuance of service if the bill is not paid in full. This being the case, to establish the requisite State action on the basis of NYT's acts, there must be found "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself" *(Jackson v Metropolitan Edison Co., supra,* p 351). Detailed inquiry may be required as to the true nature of the State's involvement *(supra).*

The Supreme Court has rather precisely enunciated the test for State action when the constitutional challenge is made to the decisions or the acts of a private entity. A State normally can be held responsible "only when it has *exercised coercive power* or has provided such *significant encouragement,* either overt or covert", that the act or decision is deemed that of the State itself; "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient" *(Blum v Yaretsky, supra,* p 1004; emphasis supplied). The only other identified instance of imputing to a State the results of private initiative is when the private entity exercises powers that are " 'traditionally the exclusive prerogative of the State' " *(supra,* at p 1005, quoting *Jackson v Metropolitan Edison Co., supra,* p 353).

The petition and other papers submitted at Special Term

simply did not meet the foregoing requirements for attributing NYT's acts to the PSC. The record is devoid of anything but conclusory allegations of the PSC's overt or covert encouragement to NYT's charges of which petitioner complains. The PSC's policy, announced in a 1970 ruling permitting utilities to include charitable contributions as a legitimate operating expense, is entirely neutral on the issue. It merely recognizes the modern reality of corporate life that it is good business for corporate citizens (utilities included) to support charitable causes in the communities where they exist and operate. The 1970 ruling expressly disclaimed any screening function in approving charitable contributions as a utility-operating expense except as to whether such contributions are truly eleemosynary. Petitioner has not set forth any factual basis suggesting that the PSC has deviated from that position in the 15 years that the policy has been in effect. Demonstrative of the absence of any overt or covert encouragement is the fact that the PSC has limited its approval to pre-1970 utility contribution levels, adjusted for inflation. Such unaligned approval of or acquiescence in the utility practice of making charitable donations and then passing them on to customers is insufficient to hold the State responsible *(Blum v Yaretsky, 457 US 991, 1004-1005, supra).* The fact that approval of the challenged act of NYT by the PSC initially took the form of a general policy statement in 1970 does not support any inference of State encouragement. Even express statutory authorization of a private act does not convert such conduct into State action *(Flagg Bros. v Brooks, 436 US 149, 165, supra).**

Nor has petitioner pleaded any facts or otherwise shown that the PSC has itself exercised any coercive power to exact a share of NYT's philanthropies from him. As previously discussed, the PSC does not mandate the making of contributions and does not require any utility to file a proposed rate tariff which includes such contributions as a recoverable operating expense. No rule, regulation or practice has been cited by petitioner to support any inference that the PSC would *require* termination of telephone service were a subscriber to deduct from his utility bill the portion thereof attributable to such contributions.

Similarly unavailing is petitioner's reliance on NYT's mo-

---

* To the extent that *Public Utilities Commn. v Pollak* (343 US 451) may have held to the contrary, its precedential value has been virtually eliminated by *Jackson v Metropolitan Edison Co.* (419 US 345, 356).

nopoly position in providing telephone service, a function heavily affecting the interest of the public. This ground for attributing the conduct of a public utility to a State was expressly rejected in *Jackson v Metropolitan Edison Co.* (419 US 345, 351-352, *supra),* which also held that the furnishing of utility service is not a function traditionally the exclusive prerogative of a State *(supra,* at p 353).

In short, the instant case falls squarely under *Blum* and *Jackson (supra).* In essence, they hold that the requisite nexus between the challenged act or decision of a private entity and a State is not established merely because (1) the entity is heavily regulated, (2) its market position is enhanced by State regulation, and (3) a State regulatory agency has authority to prevent the conduct complained of. Nothing more has been shown here.

Contrary to petitioner's contention, *Abood v Detroit Bd. of Educ.* (431 US 209) does not support the opposite conclusion. In *Abood,* the Supreme Court struck a Michigan labor statute sanctioning an "agency shop" contract requiring nonunion member employees to pay a service fee equivalent to union dues as a condition of employment, insofar as such fees may be applied to fund political activities of the union. *Abood* is quite distinguishable. First, *Abood* notes that such an agency or union shop contract is an integral element of an express legislative policy to foster exclusive representation of employees in the collective bargaining process *(supra,* at pp 220-222). Here, as has already been discussed, the PSC's policy is neutral as to the challenged action of NYT. Secondly, as the State-action discussion in *Abood* explains *(supra,* at p 218, n 12), it is only by virtue of legislative approval that such agency shop arrangements are enforceable. In the instant case, the PSC's power to prevent the charging of customers for the utilities' donations is totally derived from the PSC's general, rate-setting authority. Without that regulatory control, NYT, like any other private corporation, would be free to pass on its charitable expenses as a cost of doing business. Finally, once the agency shop contract in *Abood* was entered into, Michigan law *mandated* the employer to discharge any nonunion employee who refused to pay the service fee, and a third party (the union) was given the right to enlist the coercive power of the State to enforce that obligation on the part of the employer. No such coercive power, either to mandate NYT's imposition of the challenged charges or to

terminate petitioner's telephone service for nonpayment thereof, has been pleaded here.

For all the foregoing reasons, Special Term's order should be reversed and the petition dismissed.

MAIN, J. P., and YESAWICH, JR., J., concur with HARVEY, J.; MIKOLL and LEVINE, JJ., dissent and vote to reverse in an opinion by LEVINE, J.

Order affirmed, with costs.