■ CAROLE BULLARD et al., Appellants, v STATE OF NEW YORK, Respondent. [763 NYS2d 371] —Peters, J. Appeal from an order of the Court of Claims (Collins, J.), entered May 1, 2002, which granted defendant's motion to dismiss the claim.

Claimants are recipients of telephone calls from inmates at correctional facilities maintained by the Department of Correctional Services (hereinafter DOCS). Pursuant to a contract dated April 1, 1996 with MCI Worldcom, Inc. and its subsidiary, MCI Telecommunications Corporation (hereinafter collectively referred to as Worldcom), DOCS operates a program that permits inmates to make telephone calls to designated friends or family from coinless telephones by use of a collect call system. The contract with Worldcom was the result of a competitive bidding process. Bidders were required to meet extensive security and monitoring requirements, which included the capacity to block, store and record all phone calls; DOCS was also to receive a commission of no less than 47% of

the gross monthly revenue generated by these calls.[1] Pursuant to statutory requirements, Worldcom filed its interstate telephone rates with the Federal Communications Commission (hereinafter FCC) and its intrastate rates with the Public Service Commission (hereinafter PSC) (47 USC § 201; Public Service Law § 92). On December 16, 1998, the PSC approved the proposed rates; they have remained unchanged.

On September 27, 2000, claimants, on behalf of themselves and others, alleged that the Worldcom agreement infringed upon their rights to due process, freedom of speech and equal protection (*see* NY Const, art I, §§ 6, 8, 11). They further alleged that DOCS, through the agreement, imposed an unlawful tax and/or regulatory fee (*see* NY Const, arts III, XVI), violated General Business Law §§ 340 and 349, and tortiously interfered with their contractual rights to use alternative carriers offering call options at lower rates. Among other things, claimants sought an accounting and monetary damages incurred between April 1, 1996 and December 31, 1998. In 2002, defendant moved for summary judgment on numerous grounds, including a lack of both subject matter and personal jurisdiction, the existence of a federal action[2] and a preclusion of the claim by the "filed rate" doctrine. Claimants opposed the motion and sought class action status.

The Court of Claims dismissed the action finding that claimants failed to timely commence it either within 90 days of its accrual pursuant to Court of Claims Act § 10 (3) or (3-b) or within six months of the accrual date relative to any claim subject to the residual time limitation in Court of Claims Act § 10 (4). It determined that the accrual date was April 1, 1996, the date that DOCS entered into the agreement with Worldcom and that damages were ascertainable at least by December 17, 1998, the day *after* the PSC approved the rate plan. Claimants appeal.

As it is settled that the Court of Claims does not obtain jurisdiction unless there is a timely filing of a claim or a notice of intention to do so (*see* Court of Claims Act § 10; *Selkirk v State of New York*, 249 AD2d 818, 819 [1998]), we agree that the claim was properly dismissed as untimely. All allegations stem from the April 1, 1996 agreement with Worldcom and the rates thereafter approved by the PSC on December 16, 1998—the date after which damages were reasonably ascertainable (*see*

---

1. The stated purpose of this commission was to fund a legislatively established family benefit program.

2. There was a companion action filed in the United States District Court for the Southern District of New York on March 21, 2000.

*Commack Self-Serv. Kosher Meats v State of New York*, 270 AD2d 687, 688 [2000]; *Conner v State of New York*, 268 AD2d 706, 707 [2000]). Any contention that subsequent contractual agreements created a variant accrual date is unavailing, since the original contract detailed an option to renew for two one-year terms.

Nor do we find merit in claimant's contention that the continuing violation doctrine is applicable (*see Selkirk v State of New York, supra* at 819; *Smith v State of New York*, Ct Cl, July 8, 2002, Read, J., Claim No. 101720). While claimants characterize the damages sustained after every completed telephone call as continuing unlawful acts, we find that they are more appropriately viewed as the continuing effects of the April 1, 1996 Worldcom contract, which claimants challenged earlier as " 'unlawful conduct' " (*Commack Self-Serv. Kosher Meats v State of New York, supra* at 688, quoting *Selkirk v State of New York, supra* at 819). Moreover, we agree with the Court of Claims that claimants did not meet the discretionary standards of Court of Claims Act § 10 (6) (*see Lichtenstein v State of New York*, 93 NY2d 911, 912 [1999]) in the absence of a prior request to file a late claim (*see Selkirk v State of New York, supra* at 819-820). Additionally, since the alleged injury asserted by claimants arose directly from their payment of the filed rate approved by the PSC, " '[t]he filed rate doctrine bars [judicial proceedings] against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable' " (*Matter of Concord Assoc. v Public Serv. Commn.*, 301 AD2d 828, 830-831 [2003], quoting *Wegoland Ltd. v NYNEX Corp.*, 27 F3d 17, 18 [1994]; *see Smith v State of New York, supra*).

Next addressing claimants' reliance upon *Brown v State of New York* (89 NY2d 172, 184 [1996]) to justify a monetary award against defendant predicated upon a constitutional tort cause of action, we find that *Brown*, tempered by *Martinez v City of Schenectady* (97 NY2d 78 [2001]), supports the Court of Claims' determination that claimants had an alternative remedy through a CPLR article 78 proceeding (*see Matter of Cahill v Public Serv. Commn.*, 113 AD2d 603, 605 [1986], *affd* 69 NY2d 265 [1986], *certs denied* 484 US 829, 830 [1987]). Notably, the Court of Appeals clarified that its ruling in *Brown* sought to protect two vital interests: "the private interest that citizens harmed by constitutional violations have an avenue of redress, and the public interest that future violations be deterred" (*Martinez v City of Schenectady, supra* at 83). It further explained that the claimants in *Brown* were limited to

recovery by that action "or nothing" (*id.* at 83). Accordingly, *Martinez* recognized that where an adequate remedy could be provided, "a constitutional tort claim * * * is [not] necessary to effectuate the purposes of the State constitutional protections * * * [invoked] nor appropriate to ensure full realization of [claimants'] rights" (*id.* at 83).

Claimants' remaining arguments have been examined and found to be lacking in merit.

Crew III, J.P., Spain, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.