■ IVEY WALTON et al., Appellants, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Respondents. [808 NYS2d 483]—

Mercure, J.P. Appeal from an order and judgment of the Supreme Court (Ceresia, Jr., J.), entered October 22, 2004 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, inter alia, enjoin respondent Department of Correctional Services from collecting certain commissions on a contract with respondent MCI Worldcom Communications, Inc.

Petitioners are recipients of collect telephone calls from inmates at correctional facilities maintained by respondent Department of Correctional Services (hereinafter DOCS). The rates for such calls are set forth in exclusive services contracts between respondents MCI Worldcom Communications, Inc. and

DOCS, as detailed in a previous decision of this Court (*Bullard v State of New York*, 307 AD2d 676, 677-678 [2003]; *see Byrd v Goord*, 2005 WL 2086321 [2005], US Dist LEXIS 18544 [SD NY, Aug. 29, 2005]). In April 2001, MCI and DOCS entered into a new contract that requires MCI to continue charging the same rate, but decreases the commission collected by DOCS from 60% to 57.5% of the gross annual revenues from the program that permits inmates to make telephone calls to designated friends and family members. In May 2003, DOCS and MCI agreed to amend that contract, leaving the 57.5% commission intact but introducing a flat rate for all calls without regard to the time of day or distance of the call. By order issued October 30, 2003, the Public Service Commission (hereinafter PSC) approved MCI's proposed rate amendments, finding that the portion of the charged rates retained by MCI was just and reasonable. The PSC concluded, however, that it lacked jurisdiction to review that portion of the rate attributable to DOCS's commission because DOCS is "not a telephone corporation pursuant to the Public Service Law," and directed MCI to file new tariffs reflecting the bifurcated rates charged by DOCS and MCI.

Thereafter, in February 2004, petitioners commenced this combined proceeding and action, seeking to enjoin DOCS from collecting its commission and asserting that the appropriate statute of limitations is six years inasmuch as they seek both a declaratory judgment and monetary relief. In determining the applicable statute of limitations for a declaratory judgment action, a court must " 'examine the substance of that action to identify the relationship out of which the claim arises and the relief sought' " (*New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 201 [1994], quoting *Solnick v Whalen*, 49 NY2d 224, 229 [1980]). Here, the gravamen of petitioners' free speech, equal protection and due process claims—as in *Bullard v State of New York* (*supra*)—is that they have suffered harm as a result of DOCS's imposition of a commission. Notwithstanding their request for incidental monetary damages, the primary relief sought in connection with petitioners' constitutional claims is a judgment enjoining DOCS and MCI from collecting the commission (*see Matter of Gross v Perales*, 72 NY2d 231, 235-236 [1988]). Essentially, petitioners request that we declare the provision of the 2001 contract providing for the commission to be "affected by an error of law" (CPLR 7803 [3]).

Petitioners nevertheless characterize DOCS's imposition of the commission as legislative in nature and assert that a CPLR article 78 proceeding is not an appropriate vehicle to challenge

such a generally applicable act. They rely upon language in *Solnick v Whalen (supra)* stating that agency rate-setting determinations may be legislative—and, thus, nonreviewable in an article 78 proceeding—or reviewable administrative actions depending on whether the action was an "across-the-board" ruling or an "*ad hoc* determination of an individual party's right of reimbursement" (*id.* at 231-232; *see Matter of Lakeland Water Dist. v Onondaga County Water Auth.*, 24 NY2d 400, 407-408 [1969]). This reasoning, however, has been rejected as "fundamentally flawed" due to its failure to distinguish "between true 'legislative' acts of legislative bodies and the quasi-legislative acts of administrative bodies" (*New York City Health & Hosps. Corp. v McBarnette, supra* at 203 n 1, 2; *see* Alexander, 1994 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7801:5, 2006 Pocket Part, at 6-8), such as DOCS's determination that a commission should be imposed upon inmate collect calls. As the Court of Appeals explained, "there is no reason why article 78 review in the nature of 'mandamus to review' should not be available to the extent that the challenge fits within the language and accompanying gloss of CPLR 7801 and 7803 (3)" (*New York City Health & Hosps. Corp. v McBarnette, supra* at 204). In our view, the appropriate vehicle for petitioners' constitutional claims is an article 78 proceeding, governed by a four-month statute of limitations (*see Matter of Federation of Mental Health Ctrs. v DeBuono*, 275 AD2d 557, 559-560 [2000]).

As respondents assert, petitioners' claims accrued—that is, they became "final and binding upon the petitioner[s]" (CPLR 217 [1])—when DOCS's determination became effective, rather than when petitioners received actual notice thereof (*see Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y.*, 76 NY2d 779 [1990], *revg on dissenting op below* [Levine, J.], 150 AD2d 45, 51-54 [1989]; *Matter of New York State Rehabilitation Assn. v State of N.Y., Off. of Mental Retardation & Dev. Disabilities*, 237 AD2d 718, 720 [1997]). That occurred at the latest on July 25, 2003, when the amendment to the new contract was approved by the Comptroller. Therefore, the constitutional claims in this proceeding, commenced in February 2004, are untimely.* Further, as we held in *Bullard v State*

---

* Although petitioners argue that the four-month limitations period was not triggered until the PSC issued its October 2003 determination approving the rate structure change contained in the 2003 contractual amendment, they have declined to challenge any determination of the PSC, instead choosing to direct their claims only at DOCS's actions in entering into the contractual provisions that impose the commission requirement.

*of New York* (307 AD2d 676, 678 [2003], *supra*), the continuing violation doctrine is inapplicable here.

Petitioners' first and last causes of action seek "enforcement" of the PSC's October 2003 order and an accounting, respectively. Respondents have fully complied with the PSC's order, however, which directed MCI to file a revised tariff including both the jurisdictional rate and the DOCS commission. Inasmuch as petitioners have not demonstrated any necessity for "enforcement" of that order, their first cause of action was properly dismissed. Further, because no fiduciary relationship exists between petitioners and DOCS, they are not entitled to the equitable remedy of an accounting (*see Bouley v Bouley*, 19 AD3d 1049, 1051 [2005]; *Hydro Invs. v Trafalgar Power*, 6 AD3d 882, 886 [2004]). Finally, petitioners' General Business Law § 349 claim is untimely (*see Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 201, 208-210 [2001]) and, in any event, section 349 authorizes a claim for deceptive business practices only against a "person, firm, corporation or association," and does not apply to a state administrative agency performing governmental functions, such as DOCS here (General Business Law § 349 [b]).

The parties' remaining arguments are rendered academic by our decision.

Carpinello, Rose and Kane, JJ., concur. Ordered that the order and judgment is affirmed, without costs.