[863 NE2d 1001, 831 NYS2d 749]

IVEY WALTON et al., Appellants, v NEW YORK STATE DEPART-
MENT OF CORRECTIONAL SERVICES et al., Respondents.

Argued January 9, 2007; decided February 20, 2007

## POINTS OF COUNSEL

*Center for Constitutional Rights,* New York City (*Rachel Meeropol, Barbara J. Olshansky* and *William Goodman* of counsel), and *Community Service Society* (*Juan Cartagena* and *Craig Acorn* of counsel) for appellants. I. The courts below erred in dismissing counts II-VI as time-barred. (*Neufeld v Neufeld,* 910 F Supp 977; *Colrick v Swinburne,* 105 NY 503; *General*

*Precision v Ametek, Inc.,* 20 NY2d 898; *Uline v New York Cent. & Hudson Riv. R.R. Co.,* 101 NY 98; *Covington v Walker,* 3 NY3d 287; *Matter of Burke v Sugarman,* 35 NY2d 39; *Matter of Hacker v State Liq. Auth. of State of N.Y.,* 19 NY2d 177; *Green v Petersen,* 218 NY 280; *Bullard v State of New York,* 307 AD2d 676; *Commack Self-Serv. Kosher Meats v State of New York,* 270 AD2d 687.) II. The courts below erred in dismissing count I, seeking enforcement of the Public Service Commission order. (*People ex rel. Public Serv. Commn. of State of N.Y. v New York Tel. Co.,* 262 App Div 440, 287 NY 803; *United States v American Tel. & Tel. Co.,* 57 F Supp 451, *affd sub nom. Hotel Astor v United States,* 325 US 837.) III. The lower courts erred in failing to assess appellants' properly pleaded and supported claims. (*American Ins. Assn. v Lewis,* 50 NY2d 617; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe,* 49 AD2d 461; *New York Tel. Co. v City of Amsterdam,* 200 AD2d 315; *Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158; *Suffolk County Bldrs. Assn. v County of Suffolk,* 46 NY2d 613; *People ex rel. Public Serv. Commn. of State of N.Y. v New York Tel. Co.,* 262 App Div 440, 287 NY 803; *United States v American Tel. & Tel. Co.,* 57 F Supp 451, *affd sub nom. Hotel Astor v United States,* 325 US 837; *Castle Oil Corp. v City of New York,* 89 NY2d 334; *Greater Poughkeepsie Lib. Dist. v Town of Poughkeepsie,* 81 NY2d 574; *Yonkers Racing Corp. v State of New York,* 131 AD2d 565.)

*Andrew Cuomo, Attorney General,* Albany (*Victor Paladino, Caitlin J. Halligan, Daniel Smirlock* and *Andrea Oser* of counsel), for New York State Department of Correctional Services, respondent. I. All but two of petitioners' claims are time-barred. (*New York City Health & Hosps. Corp. v McBarnette,* 84 NY2d 194; *Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.,* 88 NY2d 56; *Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398; *Matter of United Health Servs. v Cuomo,* 180 AD2d 172; *Matter of New York State Conference of Blue Cross & Blue Shield Plans v Cooper,* 173 AD2d 60; *Matter of Konski Engrs. v Levitt,* 69 AD2d 940; *Matter of Gross v Perales,* 72 NY2d 231; *Ozanam Hall of Queens Nursing Home v State of New York,* 241 AD2d 670; *Health Servs. Med. Corp. of Cent. N.Y. v Chassin,* 175 Misc 2d 621, 259 AD2d 1053; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801.) II. The filed rate doctrine bars petitioners' claims. (*Bullard v State of New York,* 307 AD2d 676; *Matter of Cahill v Public Serv. Commn.,* 113 AD2d 603, 69 NY2d 265, 484 US 830; *Wegoland Ltd. v NYNEX Corp.,* 27 F3d

17; *Porr v NYNEX Corp.,* 230 AD2d 564, 91 NY2d 807; *Marcus v AT&T Corp.,* 138 F3d 46; *City of New York v Aetna Cas. & Sur. Co.,* 264 AD2d 304; *Matter of KLCR Land Corp. v Public Serv. Commn. of State of N.Y.,* 20 AD3d 849; *Matter of Independent Payphone Assn. of N.Y. v Public Serv. Commn. of State of N.Y.,* 5 AD3d 960, 3 NY3d 607.) III. The petition fails to state a cause of action. (*Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.,* 135 AD2d 4, 72 NY2d 840; *Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.,* 117 AD2d 156; *Arsberry v Illinois,* 244 F3d 558, 534 US 1062; *Video Aid Corp. v Town of Wallkill,* 85 NY2d 663; *City of Rochester v Chiarella,* 58 NY2d 316, *cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester,* 464 US 828; *Community Health Plan v Burckard,* 3 AD3d 724; *Courtroom Tel. Network LLC v State of New York,* 5 NY3d 222; *O'Neill v Oakgrove Constr.,* 71 NY2d 521; *Matter of Montgomery v Coughlin,* 194 AD2d 264, 83 NY2d 905; *Bell v Wolfish,* 441 US 520.) IV. If these claims may be maintained only in a declaratory judgment action, petitioners' refund claims must be dismissed for lack of subject matter jurisdiction. (*Niagara Mohawk Power Corp. v City School Dist. of City of Troy,* 59 NY2d 262; *Parsa v State of New York,* 64 NY2d 143; *Guaranty Trust Co. of N.Y. v State of New York,* 299 NY 295; *Matter of First Natl. City Bank v City of N.Y. Fin. Admin.,* 36 NY2d 87; *Alston v State of New York,* 97 NY2d 159; *Main Evaluations v State of New York,* 296 AD2d 852; *Ouziel v State of New York,* 174 Misc 2d 900; *Matter of Gross v Perales,* 72 NY2d 231; *Weissman v Evans,* 56 NY2d 458; *Morell v Balasubramanian,* 70 NY2d 297.)

*Steptoe & Johnson LLP,* Washington, D.C. (*Anthony C. Epstein,* admitted pro hac vice, of counsel), and *Phillips Lytle LLP,* Albany (*Kelly M. Lester* and *William Christ* of counsel), for MCI Worldcom Communications, Inc., respondent. I. MCI Worldcom Communications, Inc. complied with the Public Service Commission order. II. Commissions to property owners are a standard and legitimate cost of providing payphone service that telephone companies recover in their tariffed rates. (*People ex rel. Public Serv. Commn. of State of N.Y. v New York Tel. Co.,* 262 App Div 440, 287 NY 803; *United States v American Tel. & Tel. Co.,* 57 F Supp 451, *affd sub nom. Hotel Astor v United States,* 325 US 837.)

*Steven Banks,* New York City, *John Boston, Milton Zelermyer, Esmeralda Simmons,* Brooklyn, and *Robin Steinberg,* Bronx, for Legal Aid Society of the City of New York and others, amici cu-

riae. The decision below protects a practice that unfairly and disproportionately impacts poor or low-income individuals and families, and impairs the ability of legal services organizations to provide representation, legal advice and other assistance to prisoners. (*Matter of Burke v Sugarman,* 35 NY2d 39; *Matter of Cahill v Public Serv. Commn.,* 113 AD2d 603, 69 NY2d 265; *Allen v Blum,* 58 NY2d 954; *Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.,* 44 NY2d 336.)

*David Loftis,* New York City, *Barry C. Scheck* and *Peter J. Neufeld* for Innocence Project, Inc. and another, amici curiae. I. The Constitution provides for the preservation of familial relationships during incarceration. (*Turner v Safley,* 482 US 78; *Pell v Procunier,* 417 US 817; *Morgan v LaVallee,* 526 F2d 221; *Thornburgh v Abbott,* 490 US 401; *Roberts v United States Jaycees,* 468 US 609; *Kentucky Dept. of Corrections v Thompson,* 490 US 454.) II. Prisoners have a First Amendment right to make telephone calls; exorbitant rates may not be charged so as to deprive access by prisoners. (*Johnson v Galli,* 596 F Supp 135; *Washington v Reno,* 35 F3d 1093; *Johnson v State of Cal.,* 207 F3d 650; *Strandberg v City of Helena,* 791 F2d 744; *Hutchings v Corum,* 501 F Supp 1276; *Moore v Janing,* 427 F Supp 567; *Procunier v Martinez,* 416 US 396; *Thornburgh v Abbott,* 490 US 401; *Houchins v KQED, Inc.,* 438 US 1; *Overton v Bazzetta,* 539 US 126.)

*Kramer Levin Naftalis & Frankel LLP,* New York City (*Eric A. Tirschwell, Keith M. Donoghue, Erin E. Oshiro* and *Aaron S. Fleisher* of counsel), for the Sentencing Project and others, amici curiae. I. The return of prisoners to communities throughout the state is a recognized public policy concern of surpassing magnitude. II. Studies of recidivism uniformly demonstrate that prisoners who maintain close social ties are less likely to engage in crime following release from custody. III. Closer social ties assist former prisoners in managing a range of issues which might otherwise precipitate a return to crime, while also mitigating the effects of incarceration on families and communities. IV. Telephone calls are essential to prisoners' preservation of social ties. (*Washington v Reno,* 35 F3d 1093; *Tucker v Randall,* 948 F2d 388.) V. The importance of prison telephone communications has occasioned calls for reform. (*City of New York v State of New York,* 40 NY2d 659.)

*Office of the Public Advocate for the City of New York,* New York City (*Mary Mastropaolo* of counsel), for Betsy Gotbaum

and others, amici curiae. The lower court rulings are in contrast with telephone customers' constitutional and other legal rights and thereby protect a practice that unjustly affects New York City's most vulnerable residents and communities. A careful examination clearly illustrates that New York City residents are exploited by this unlegislated tax.

*Cassie M. Pierson,* San Francisco, California, for Legal Services for Prisoners with Children and others, amici curiae. I. Contact between incarcerated adults and their family members is difficult. II. The high cost of telephone calls has an adverse effect on parents, children and other relatives of persons incarcerated in New York State prisons.

## OPINION OF THE COURT

PIGOTT, J.

Petitioners are recipients of collect calls from New York State Department of Correctional Services (DOCS) inmates. They commenced suit seeking to enjoin DOCS from collecting a 57.5% commission on its 2001 contract with MCI Worldcom Communications, Inc. (MCI), damages and other relief. DOCS and MCI moved to dismiss the petition as time-barred and as failing to state a cause of action. Supreme Court dismissed all claims, and the Appellate Division affirmed. The lower courts held that the first cause of action should be dismissed on the merits and that the four constitutional claims as well as the sixth cause of action should be dismissed as time-barred. Supreme Court also held that the last claim was time-barred, while the Appellate Division rejected it on the merits. Because we find petitioners' constitutional claims to be timely, we modify the order of the Appellate Division, reinstate those four claims, and remit the matter to Supreme Court for further proceedings not inconsistent with this opinion.

### I.

Inmates in DOCS prisons who wish to make telephone calls to their family members, friends or lawyers are required to do so by placing collect calls from coinless telephones in their respective correctional facilities. Because these calls are collect, the financial obligation falls to the recipient of the telephone

call. This telephone system is installed and maintained, and telephone service provided, by MCI[1] under an exclusive contract.

DOCS and MCI signed an initial contract on April 1, 1996, and a second contract on April 1, 2001. The contracts were awarded to MCI following a competitive bidding process; DOCS specified that it should receive a commission of at least 47% of the gross revenue generated by the collect calls. Under the 1996 contract, MCI remitted 60% of its revenues from these calls to DOCS; the percentage was reduced to 57.5% in 2001. The commissions received by DOCS are placed in a "Family Benefit Fund" account used primarily for medical care and also for other programs that benefit inmates, such as a family reunion program, nursery and family development programs, basic cable television service and medical parole. Only a small percentage of the funds is used for maintenance of the telephone system.

On October 30, 1998, MCI filed a tariff with the New York State Public Service Commission (PSC), setting forth the per-minute rates and per-call surcharges applying to the inmates' calls under the first contract, and requested that its DOCS service be treated as a unique service not subject to standard rate caps. In approving the MCI rates and surcharges, on December 17, 1998, the PSC reasoned that MCI's service provides DOCS with security features[2] not traditionally associated with collect calling, thus justifying, in the PSC's view, the high call rates (1998 NY PSC Case 98-C-1765, 1998 NY PUC LEXIS 693, at *2-3).

Recipients of telephone calls from inmates at DOCS correctional facilities commenced an action in the Court of Claims on September 27, 2000, challenging the 1996 contract.[3] They argued that DOCS, through the agreement with MCI, infringed upon their rights to due process, freedom of speech and equal protection, imposed an unlawful tax and/or regulatory fee, violated General Business Law §§ 340 and 349, and tortiously interfered with their rights to use other telephone service carri-

---

1. MCI Worldcom Communications, Inc. is now known as MCI Communications Services, Inc., doing business as Verizon Business Services.

2. MCI provides DOCS with various security mechanisms, including call monitoring equipment, call blocking capability, personal identification numbers for inmates and calling protocols alerting a recipient that the collect call is from an inmate.

3. A companion action was filed in the United States District Court for the Southern District of New York (see Byrd v Goord, 2005 WL 2086321, 2005 US Dist LEXIS 18544 [SD NY, Aug. 29, 2005]).

ers offering lower rates. The court dismissed the claims as time-barred under Court of Claims Act § 10, and the Appellate Division affirmed in July 2003 (*Bullard v State of New York*, 307 AD2d 676 [2003]).

In May 2003, DOCS and MCI executed an amendment to the 2001 contract, implementing a flat rate of 16 cents per minute and a single surcharge of $3 per call. The State Comptroller approved the amendment on July 25, 2003. MCI then filed a revised tariff with the PSC on August 14, 2003. Recipients of the DOCS inmate collect calls took the opportunity to challenge the 2001 contract before the PSC. Several individuals and organizations, including two of the appellants in the present case and their counsel, filed timely comments with the PSC, arguing, among other things, that the DOCS-MCI inmate telephone system violated the constitutional rights of DOCS inmates and their families, and requested a hearing. Although no formal hearing was granted, summaries of the comments occupy some 17 pages of the PSC's decision.

In its order, issued and effective on October 30, 2003, the PSC determined that its jurisdiction extends to MCI but not to DOCS because the latter is not a telephone corporation. The PSC declined to review the portion of the MCI rate that corresponds to the 57.5% commission retained by DOCS, but approved as just and reasonable what it called the "jurisdictional portion of the proposed rate," corresponding to the remaining 42.5% of the surcharge and per-minute rate. The PSC directed MCI to file new tariffs separately identifying the unreviewed and the "jurisdictional" parts of its surcharge and rate, and MCI duly complied.

On February 26, 2004, petitioners[4] commenced this combined declaratory judgment action and CPLR article 78 proceeding against DOCS and MCI in Supreme Court. Petitioners allege seven causes of action. Their first claim seeks enforcement of the PSC's October 2003 order, interpreting it as implicitly prohibiting DOCS from collecting any commission from MCI beyond the rate the PSC expressly approved. Four causes of action allege violations of "the power to tax," "due process rights," "the right to equal protection," and "free speech and association rights" under the New York State Constitution. The sixth sets forth a General Business Law § 349 claim. The seventh cause of action seeks an accounting.

---

4. Three of the petitioners are family members of DOCS inmates and the other two are nonprofit corporations providing legal defense services.

We agree that petitioners' first, sixth and seventh claims were properly dismissed. We conclude that the constitutional claims were timely, however, and should not have been dismissed. Accordingly, we modify the order of the Appellate Division, and remit the matter to Supreme Court for further proceedings.

## II.

Whether petitioners' constitutional claims are subject to the four-month statute of limitations period under CPLR article 78 or the residuary six-year limitations period of CPLR 213 (1) turns on whether the parties' rights could have been resolved in an article 78 proceeding (*Solnick v Whalen*, 49 NY2d 224, 229-230 [1980]; *New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 200-201 [1994]). While it is well established that a challenge to the validity of legislation may not be brought under article 78, this principle does not apply to the quasi-legislative acts and decisions of administrative agencies such as DOCS (*see McBarnette*, 84 NY2d at 204). Here, petitioners are challenging an administrative determination—DOCS's decision to provide a collect-call-only telephone system to inmates and to require the telephone corporation it exclusively contracts with to pay it substantial commissions—by challenging the contracts making that determination binding on others. Petitioners are not disputing the validity of any legislation. They have furnished no compelling reason why article 78 review, in the nature of "mandamus to review," should not be available to them under CPLR 7803 (3), and thus are subject to the four-month statute of limitations.

The more difficult question is when the statute of limitations began to run. A petitioner who seeks article 78 review of a determination must commence the proceeding "within four months after the determination to be reviewed becomes final and binding upon the petitioner" (CPLR 217 [1]). An administrative determination becomes "final and binding" when two requirements are met: completeness (finality) of the determination and exhaustion of administrative remedies. "First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be . . . significantly ameliorated by further administrative action or by steps available to the complaining party" (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]; *see also Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540,

548 [2006]; *Matter of Comptroller of City of N.Y. v Mayor of City of N.Y.*, 7 NY3d 256, 262 [2006]; *Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 316 [2006]).

The finality and exhaustion of remedies requirements are drawn from case law on ripeness for judicial review (*see Matter of Essex County v Zagata*, 91 NY2d 447, 453-454, 454 n [1998]; *Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510 [1986], *cert denied* 479 US 985 [1986]; *see also Williamson County Regional Planning Comm'n v Hamilton Bank of Johnson City*, 473 US 172 [1985]). The two requirements are conceptually distinct. "The focus of the 'exhaustion' requirement . . . is not on the challenged action itself, but on whether administrative procedures are available to review that action and whether those procedures have been exhausted" (*Church of St. Paul & St. Andrew*, 67 NY2d at 521; *see also Williamson County Regional Planning Comm'n*, 473 US at 192-193). Those who wish to challenge agency determinations under article 78 may not do so until they have exhausted their administrative remedies, but once this point has been reached, they must act quickly—within four months—or their claims will be time-barred.

When a contract between a government agency and a telephone company specifies the rate the company will charge, those who wish to challenge the contract, on grounds related to the rate, have not exhausted their administrative remedies until approval by the PSC, which has exclusive authority to review and determine intrastate telephone rates. Only then does the agency determination underlying the contract become "final and binding" (CPLR 217 [1]).

■ The question of when the 2001 contract became ripe for review is complicated by the May 2003 amendment. The 2001 contract lowered the DOCS commission percentage to 57.5% but did not change MCI's call rates and surcharges. The 2003 amendment, on the other hand, kept the commission percentage but changed the call rate. The Appellate Division held that DOCS's determination became final and binding "at the latest on July 25, 2003, when the amendment to the new contract was approved by the Comptroller" (25 AD3d 999, 1001 [2006]). This would be true, were it not for the fact that the May 2003 amendment altered the call rate. Since the rate change needed to be approved by the PSC, the 2001 contract became ripe for judicial review only upon issuance of the PSC order on October 30, 2003.

While the PSC concluded that it did not have jurisdiction over DOCS, it could have determined that MCI's call rate and surcharge as a whole were "unjust, unreasonable or unjustly discriminatory or unduly preferential or in anywise in violation of law" (Public Service Law § 97 [1]) and ordered them to be lowered. It was reasonable for petitioners to believe that the PSC could have rejected MCI's rate and surcharges in their entirety, just as, in 1998, it had approved them in their entirety. Such a result would quite obviously have significantly ameliorated the injuries petitioners contend they have suffered as a result of the high collect call rates, and would have forced DOCS to abandon the commission structure of its inmate collect calling program.

In this manner, DOCS's determination remained subject to corrective action *by DOCS* until the date of the PSC order. The present case therefore differs from *Stop-The-Barge v Cahill* (1 NY3d 218 [2003]). There petitioners challenged actions by the New York City Department of Environmental Protection (DEP) and the New York State Department of Environmental Conservation (DEC), giving approval to a power generator project. We held that the statute of limitations applicable to the cause of action against DEP began to run when DEP issued a conditioned negative declaration (CND), rather than when DEC issued an air permit. We reached this conclusion in part because the CND marked the point at which the review process by DEP, the agency petitioners challenged in this claim, was complete (*see* 1 NY3d at 223; *see also Eadie*, 7 NY3d at 317). A refusal by DEC to issue an air permit would not have forced DEP to reconsider its CND. Here, on the other hand, corrective action by DOCS would necessarily have followed disapproval of the MCI rates by the PSC, and therefore petitioners had not exhausted available administrative remedies until the PSC review was complete.

In deciding the point at which petitioner's administrative remedies are exhausted, courts must take a pragmatic approach and, when it is plain that "resort to an administrative remedy would be futile" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]), an article 78 proceeding should be held ripe, and the statute of limitations will begin to run. But hindsight cannot be used to determine whether administrative steps were futile. Although the PSC ultimately decided to approve the MCI call rate only in part, declining to review a percentage of the rate corresponding to the DOCS commission, petitioners could reasonably have believed that the PSC would either approve or reject the rate as a whole.

We conclude that petitioners reached the point at which the injuries they allege could no longer be ameliorated by administrative action on October 30, 2003, when PSC issued its determination, and therefore that the constitutional claims in their combined action and proceeding, commenced on February 26, 2004, are timely. The parties' remaining arguments concerning timeliness are academic.

■ The lower courts, having found petitioners' constitutional claims untimely, did not have occasion to decide whether they state a cause of action. "While this Court may consider alternative legal grounds raised at but not addressed by the Appellate Division, the preferable, more prudent corrective action is remittal" (*Schiavone v City of New York*, 92 NY2d 308, 317 [1998]). Therefore Supreme Court should now determine the question whether petitioners' constitutional claims state a cause of action. We agree with the Appellate Division that petitioners' first claim, seeking "enforcement" of the PSC order, and their last claim, seeking an accounting, were properly dismissed on the merits, and that their General Business Law § 349 claim is untimely.

Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the second through fifth causes of action and remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

SMITH, J. (concurring). Here, as in *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607, 614 [2006, R.S. Smith, J., concurring]), I find my preference for one statutory interpretation over another influenced by underlying constitutional issues.

The question of how to apply the statute of limitations here is difficult, as it often is in litigation challenging government action. The two possibilities are well presented by Judge Pigott's majority opinion and Judge Read's dissent. I am joining the result and reasoning of the majority opinion, in part because I doubt whether the result urged by the dissent would be constitutionally acceptable in this case.

To affirm the Appellate Division decision here would be to hold that petitioners' constitutional claims—at least some of which, I think, are quite substantial—became time-barred four months after the DOCS-MCI contract, or the most recent amendment to it, was approved by the Comptroller. In theory, petitioners—most of them family members of New York State

prisoners—could have learned of the Comptroller's approval by perusing the public record; as a practical matter, it is highly unlikely that they did so, and unreasonable to expect them to. Thus, the Appellate Division has in effect held that claims like these can be time-barred before the people entitled to bring them knew or reasonably should have known that they existed. I understand the need of government agencies for finality and repose, but I have trouble accepting the idea that agencies can extinguish constitutional rights so easily.

It is in part to avoid the constitutional problems that this case would otherwise present that I choose the majority's rather than the dissent's view of when petitioners' claims accrued for statute of limitations purposes. For that reason, I think the dissent may be right, in a sense, to suggest that our statute of limitations holding here is "sui generis" (dissenting op at 202).

READ, J. (dissenting). I respectfully dissent. The lower courts correctly held that petitioners' claims were time-barred, the four-month statute of limitations under CPLR article 78 having expired in 2001. Our article 78 precedent on accrual—which no one has suggested altering—simply does not lead to the result that the majority reaches.

Petitioners attack a 2001 contract between the New York State Department of Correctional Services (DOCS) and MCI Worldcom Communications, Inc. (MCI), set to expire on March 31, 2007. This contract granted MCI the exclusive right to provide collect-call only telephone service to inmates at specified rates, and required MCI to pay DOCS a commission of 57.5% of its gross receipts from its customers, the recipients of the inmate-initiated collect calls. Prison systems throughout the country have entered into similar exclusive dealing arrangements, which commonly feature stiff commissions—usually ranging between 20% and 63%, with most states charging more than 45% (see Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 17 FCCR 3248, 3253 n 34, 2002 WL 252600, *3 n 34, 2002 FCC LEXIS 889, *12 n 34). And throughout the country, these contracts have been criticized as fundamentally unfair, and have proved to be lightning rods for litigation. Indeed, the day before this appeal was argued, the Governor announced that the State would change its policy as of April 1, 2007 to make rates reflect only the costs of inmate calls. In addition to injunctive relief, however, petitioners are

trying to obtain refunds as damages. Since Supreme Court may award damages in an article 78 proceeding if they are incidental to the primary relief sought (*see* CPLR 7806; *Matter of Gross v Perales*, 72 NY2d 231, 236 [1988]), we are left with the question of when the four-month statute of limitations began to run in this case, and whether petitioners' claims are timely.

The majority holds that they are indeed timely because

> "[w]hen a contract between a government agency and a telephone company specifies the rate the company will charge, those who wish to challenge the contract, on grounds related to the rate, have not exhausted their administrative remedies until approval by the [Public Service Commission], which has exclusive authority to review and determine intrastate telephone rates. Only then does the agency determination underlying the contract become 'final and binding' (CPLR 217 [1])" (majority op at 195).

But the facts of this case do not fit this rule, which, at least as applied here, is at odds with recent precedent, notably our decision in *Stop-The-Barge v Cahill* (1 NY3d 218 [2003]).

The rates charged in the 2001 contract, based on time-of-day and distance, were exactly the same as the rates charged in a predecessor contract between DOCS and MCI, effective April 1, 1996. The Public Service Commission (PSC) approved these rates on December 17, 1998, a determination that was never challenged. The 2001 contract reduced the commission from 60% to 57.5%, but did not tamper with the approved rates. In other words, MCI was charging its customers the same rates under the 2001 contract as it had charged under the 1996 contract, but was paying DOCS a lesser percentage of its gross receipts. Accordingly, the 2001 contract did not prompt MCI to seek approval from the PSC of the rates set forth in the contract: they had already been approved in 1998. Under the majority's own rule, then, petitioners' lawsuit was five years too late to challenge DOCS' determination to require a commission, as embodied in its 1996 contract, because they should have sued within four months after the PSC in 1998 approved the rates incorporating the commission. Under the majority's own rule, petitioners were also almost three years too late to challenge this determination as embodied in the 2001 contract. That is, since DOCS' determination in 2001 did not require MCI to seek follow-up rate approval from the PSC, petitioners should have sued within four months after the 2001 contract took effect.

Of course, in 2003 DOCS and MCI amended the 2001 contract. The amendment, however, only changed the structure of the rates from time-of-day and distance to a flat rate.* It did not modify or change or in any way affect DOCS' final and binding determination made in 2001 to require a 57.5% commission, which is what petitioners attack. The majority essentially concludes, however, that petitioners' otherwise time-barred claims were somehow revived when the PSC approved the modified rate structure on October 30, 2003, even though the commission that petitioners challenge was not affected by the restructuring. Indeed, the PSC took the position in its 2003 determination that it did not even have *jurisdiction* over the commission. The PSC's disavowal of jurisdiction may have come as a complete surprise to petitioners, but we do not usually relax the statute of limitations to give a break to sympathetic litigants whose view of the law is arguably well-founded or plausible, but nonetheless mistaken.

Under our traditional rules of accrual, petitioners had only two choices in 2003: to sue DOCS to challenge the rate restructuring (not the commission) within four months after the contract amendment embodying the restructured rates took effect; or, to sue the PSC within four months after its decision to approve the modified rate structure. They did neither. Instead, they sued DOCS within four months after the PSC's determination, and did not sue the PSC at all. Moreover, in an article 78 proceeding brought against the PSC, petitioners certainly could have argued that whether or not the PSC has jurisdiction over DOCS, the Public Service Law nonetheless required the PSC to determine whether the restructured rates filed by MCI were just and reasonable as a whole. After all, although the PSC only reviewed the so-called jurisdictional portion of MCI's rate, it ordered MCI to file a tariff with a total rate that included both the jurisdictional component and the commission, and thereby authorized MCI to charge this total rate. Indeed, this was the only rate that MCI could legally charge (*see* Public Service Law § 92 [2] [d]).

Next, this case cannot be distinguished from *Stop-The-Barge*. According to the majority, the two cases differ because

---

* DOCS estimated that the new rate structure would likely increase the phone bills of the families of the 17% of the inmates incarcerated closest to their relatives' homes, but would create a savings for the families of the remaining 83% of the inmates' families. The rate change was expected to be revenue-neutral.

"[a] refusal by [the New York State Department of Environmental Conservation] to issue an air permit would not have forced [the New York City Department of Environmental Protection] to reconsider its [conditioned negative declaration]. Here, on the other hand, corrective action by DOCS would necessarily have followed disapproval of the MCI rates by the PSC, and therefore petitioners had not exhausted available administrative remedies until the PSC review was complete" (majority op at 196).

The majority is incorrect on both scores. In *Stop-The-Barge*, a company was seeking the necessary regulatory approvals to install a power generator on a floating barge in Brooklyn, which required State Environmental Quality Review Act (SEQRA) approval from the New York City Department of Environmental Protection (DEP), and an air permit from the New York State Department of Environmental Conservation (DEC). Whether DEC's "refusal" of the company's application for an air permit would have forced DEP to reconsider its conditioned negative declaration (CND) under SEQRA would have depended entirely on the terms of the rejection. Theoretically, I suppose, DEC could have outright refused to issue an air permit to the company, or might have attached conditions so onerous that the company decided to scrap the project altogether. Under these circumstances, DEP would never have reconsidered the CND because the project would have been abandoned. More likely, however, DEC would have attached conditions to its approval, which, depending on their terms, might well have required the company to ask DEP to revise the CND's provisions. Similarly, in this case, what further action DOCS might or might not have been forced to take would have depended entirely on the terms of any PSC "disapproval." For example, the PSC might have disapproved the rate restructuring for reasons wholly unrelated to the commission. Indeed, since the PSC took the position that it had no jurisdiction over the commission in the first place, this would have to have been the case. In that event, it is probable that the existing rates—the rates that the PSC approved in 1998 and which were never challenged and which, of course, included the commission—would have stayed in effect while the PSC sorted out what changes it might require MCI to make to its proposed new tariff filing (*see* Public Service Law § 92 [2] [e], [g]). There is no way to predict what, if any, "corrective action" DOCS might have eventually taken as a result of a hypothesized PSC disapproval.

What all of this shows, of course, are the ambiguities and difficulties inherent in trying to craft an exception to our usual claims-accrual rule—as the majority does in this case—so as to make a challenge to an administrative agency's final and binding determination accrue (or, more accurately, revive) on the date when another administrative agency makes a corollary determination with respect to the same contract or project. It is almost always possible for a party to argue—as petitioners do here—that some action the second agency (here, the PSC) might have taken might have caused the first agency (here, DOCS) to revisit the complained-about decision in whole or in part, or that the party had a good-faith belief that this was so. But this does not make the first agency's determination any less final and binding. Moreover, such an approach is antithetical to the finality and certainty that the four-month statute of limitations under CPLR article 78 is intended to achieve. I do not for a moment think that my colleagues intend to push our law in this direction any further than the facts of this case.

I note also that we have consistently sought over the past several years to encourage parties who seek to challenge an agency determination to do so at the earliest possible date (*see Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540 [2006] [city planning commission's determination to approve condemnation of property final and binding after expiration of 20-day city council call-up period notwithstanding fact that mayor's office subsequently approved project]; *Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30 [2005] [agency letter denying franchise starts statute of limitations notwithstanding fact that letter is conditional and gives applicant 60 days to cure]; *Stop-The-Barge v Cahill, supra* [under SEQRA, CND is final agency determination that starts statute of limitations notwithstanding fact that other administrative proceedings will take place]). I do not believe that my colleagues intend to retract our strong message that litigants should risk suing prematurely rather than too late. Again, this case simply has to be chalked up as sui generis. I also note that the majority opinion says nothing about the merits of petitioners' constitutional claims, or about whether an aggrieved ratepayer may recover a component of a filed tariff in litigation against any party. These issues, and perhaps others, are left for the lower courts to tackle in the first instance.

Finally, the concurrence suggests that the constitutional nature of petitioners' claims controls the date of accrual, and

(apparently) that while it may be unreasonable to expect the family members to have learned of the Comptroller's approval by "perusing the public record" (concurring op at 198), it was not unreasonable to expect them to have known about the PSC's order from the public record. While we have often adjudicated constitutional claims under CPLR article 78 (*see e.g. Matter of Texas E. Transmission Corp. v Tax Appeals Trib.*, 95 NY2d 323 [2000] [adjudicating Commerce Clause claim in article 78 proceeding]), we have never keyed accrual to the nature of the claim. All petitioners are subject to the same four-month statute of limitations, which accrues when the agency's determination is final and binding, whether they allege a constitutional violation or some other error of law.

Chief Judge KAYE and Judges CIPARICK and SMITH concur with Judge PIGOTT; Judge SMITH concurs in a separate opinion; Judge READ dissents in another opinion in which Judge GRAFFEO concurs; Judge JONES taking no part.

Order modified, etc.