OPINION OF THE COURT
Frank P. Milano, J.
Defendant moves for summary judgment dismissing the claim, which essentially alleges that claimant Antwone Nicholson was caused to suffer electric shock punishment while a student at a Massachusetts private residential school for children with mental or emotional disabilities due to defendant’s negligence in failing to properly investigate and/or regulate the school *315 while keeping the school on a list of approved out-of-state residential educational facilities.
Antwone was born in January 1989 and was adopted as an infant by Evelyn Nicholson. Antwone suffered severe abuse as an infant at the hands of his natural parents and is described by his local school district, the Freeport Union Free School District, as emotionally disturbed. Antwone has been diagnosed as suffering from attention deficit hyperactive disorder as well as obsessive-compulsive disorder.
In the fall of 2003, pursuant to the requirements of article 89 of the Education Law, the Freeport Union Free School District established a Committee on Special Education (CSE) for Antwone. The CSE, which included representatives of the Freeport Union Free School District, a community aide, a parent representative and Antwone’s mother Evelyn, reviewed Antwone’s physical, educational, social and psychological history and developed an individualized education program (IEP) for Antwone. The IEP noted that Antwone had a history of aggressive and inappropriate behavioral difficulties, including significant psychiatric treatment and hospitalizations. The IEP found that the school district’s general education facilities, related services, resource room programs, special education services, as well as its BOCES programs, were unable to meet the instructional, behavioral, physical, and/or therapeutic needs of Antwone.
Education Law § 4402 (2) (b) (2) provides that if an appropriate public program is not available to implement a student’s IEI) the board of education of the local school district may attempt placement of the student in an in-state or out-of-state private school. The New York State Education Department (SED) maintains a list of approved private in-state and out-of-state residential educational facilities pursuant to 8 NYCRR 200.7.
The IEP found that Antwone would benefit from a behavior modification program to help motivate and sustain learning behavior. Because the school district was unable to provide Antwone with the necessary educational services, due to his disability and because Antwone had already been rejected from several residential educational facilities in the State of New York, the IEP recommended that Antwone be placed at the Judge Rotenberg Center (JRC) in Canton, Massachusetts. Antwone’s mother, Evelyn, signed the IEP, signifying her acceptance of the IEP recommendations.
The defendant, whether through the State Education Department or otherwise, was not a member of the Committee on *316 Special Education and did not participate in the formulation of the individualized education program for Antwone. The defendant had no role in placing Antwone at the JRC other than to place and maintain JRC on the list of approved out-of-state private educational facilities from which the Committee on Special Education, including Antwone’s mother Evelyn, chose JRC.
At all relevant times, JRC was an approved Massachusetts private residential special education school program subjected to regular reviews conducted by the Massachusetts Department of Education in order to maintain “full approval” status. JRC was also subject to announced and unannounced monitoring visits throughout the approval term by the Massachusetts Department of Education and by any school district which had placed students in the program.
Subsequent IEPs for Antwone for the 2004-2005 and 2005-2006 school years noted the use of aversive behavioral intervention on Antwone through the use of a graduated electronic decelerator (GED) which administers an electric shock to a wearer of the device in response to inappropriate behavior. These subsequent IEPs were also signed by Antwone’s mother, Evelyn, demonstrating her knowledge and acceptance of the IEP provisions.
Prior to use of aversive interventions on Antwone, including use of the GED, Massachusetts law required JRC to obtain an order, judgment and decree, dated October 27, 2004, from a Justice of the Probate and Family Court of the Commonwealth of Massachusetts permitting use of the aversive interventions and appointing Evelyn Nicholson permanent guardian of Amtwone to “monitor [along with an appointed court monitor] the administration of the Amended Behavior Modification Treatment Plan ... of the Judge Rotenberg Educational Center, Inc.” Antwone was represented by a court-appointed Massachusetts attorney during the Massachusetts court proceeding. After a hearing, the order, judgment and decree of the Probate and Family Court of the Commonwealth of Massachusetts found, by clear and convincing evidence, that
“JRC’s Amended Behavior Modification Treatment Plan and Anti-Psychotic Medication Treatment Plan are the most effective, least restrictive means available for treating the Ward at the current time. The prognosis for the Ward without treatment is poor. The prognosis with treatment is cautiously optimis *317 tic for improvement in his problematic behaviors.”
In support of its application, defendant provides the affidavit of James P. DeLorenzo, Statewide Coordinator for Special Education Services in New York’s Office of Vocational and Educational Services for Individuals with Disabilities. DeLorenzo avers that New York State had no “policies or regulations in effect that would prohibit the use of aversive interventions by either in-state or out-of-state schools,” during the time periods relevant to the claim.
DeLorenzo states that the New York State Department of Education performed monitoring of JRC through periodic on-site inspections, and further “relied on the oversight by the Commonwealth of Massachusetts,” through both its Department of Education and its Probate and Family Court.
DeLorenzo asserts that placement of a private school, eligible for New York State funding, whether in-state or out-of-state, on the SED list of approved schools “is a discretionary determination made by the SED based on the criteria set forth in Section 200.7 for the approval of private schools for students with disabilities funded pursuant to Article 89 of the Education Law.” Finally, DeLorenzo maintains that JRC “remained an approved school based upon discretionary determinations made by the SED in its periodic reviews of JRC.”
The claim alleges that defendant violated Antwone’s civil rights; intentionally and negligently disregarded New York State regulations concerning the use of corporal punishment; caused and consented to the assault and battery (including electric shock) of Antwone; negligently placed Antwone in JRC; negligently failed to investigate JRC; failed to enforce certain laws; and negligently caused Antwone to eat only vegan food while residing at JRC. *318 Further, “mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” to defeat a motion for summary judgment (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
*317 “A motion for summary judgment should be entertained only after the moving party has established, by competent admissible evidence, that it is entitled to judgment as a matter of law ... If the movant meets this initial burden, the opposing party is required to submit evidence which raises a material issue of fact to preclude an award of summary judgment” (Ware v Baxter Health Care Corp., 25 AD3d 863, 864 [3d Dept 2006]; see Svoboda v Our Lady of Lourdes Mem. Hosp., Inc., 31 AD3d 877 [3d Dept 2006]).
“In opposition to a motion for summary judgment a *318 party must assemble and lay bare affirmative proof to establish that genuine material issues of fact exist. Only the existence of a bona fide issue raised by evidentiary fact rather than one based on conelusory or irrelevant allegations, will be sufficient to defeat a motion for summary judgment where the movant has made out a prima facie basis for the granting of the motion” (Archambault v Martinez, 120 AD2d 632, 632-633 [2d Dept 1986]).
In support of its motion for summary judgment, defendant presents the affidavit of James E DeLorenzo, as set forth above, together with copies of the pleadings, the deposition transcript of Evelyn Nicholson, copies of the individualized education program for Antwone during the relevant time periods, the order, judgment and decree of the Massachusetts Frobate and Family Court (including a copy of all the underlying papers and proceedings), copies of documents generated by the Massachusetts Department of Education with respect to its approval and regulation of JRC, and copies of documents generated by the New York State Department of Education with respect to its monitoring and review of JRC.
In response to the defendant’s motion, claimants offer the affirmation of their attorney (adopted without substantive input by Evelyn Nicholson in her affidavit) who takes issue with the decisions made by defendant with respect to its listing and monitoring of JRC pursuant to the requirements of the Education Law.
It is well-settled that “[p]ublic entities remain immune from negligence claims arising out of the performance of their governmental functions” (Miller v State of New York, 62 NY2d 506, 510 [1984]; see Court of Claims Act § 8). The court must therefore determine whether defendant was engaged in a governmental function with respect to the activities referred to in the claim.
As the Court of Appeals explained in Miller (at 511-512):
“A governmental entity’s conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters *319 directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection.”
The oversight and regulation of the educational system in the State of New York, together with the determination of its policies, is a “governmental” and “fully public function” (Matter of University of State of N.Y. v Newman, 180 AD2d 396, 398 [3d Dept 1992]; see Education Law §§ 101, 207).
Defendant was acting in a governmental capacity when it placed JRC on its list of approved private schools, when it kept JRC on its approved list after monitoring and inspecting JRC and when it allegedly failed to enforce certain laws and regulations. The affidavits of James R DeLorenzo, Statewide Coordinator for Special Education Services in New York’s Office of Vocational and Educational Services for Individuals with Disabilities, and Rebecca Cort, Deputy Commissioner for the Office of Vocational and Educational Services for Individuals with Disabilities, together with the voluminous records of SED inspection and monitoring of JRC, demonstrate that defendant exercised reasoned judgment and discretion in listing, and thereafter maintaining, JRC on its list of approved out-of-state facilities.
The government is immune from liability for harm resulting from a failure (assuming there was such a failure) to enforce statutory or regulatory requirements unless the claimant demonstrates the existence of a special relationship between the defendant and the claimant (Garrett v Town of Greece, 55 NY2d 774 [1981]; Sanchez v Village of Liberty, 42 NY2d 876 [1977]; Motyka v City of Amsterdam, 15 NY2d 134 [1965]). The foundation of this immunity is that such activities are governmental functions and are duties owed to the public at large, rather than to any specific person, absent a special relationship, and the government must be permitted to exercise discretion in the allocation of governmental resources (O’Connor v City of New York, 58 NY2d 184, 191 [1983]).
Where the defendant State is “sued for negligence in the performance of its governmental functions, it may not be found li *320 able unless it was, by statute or its own voluntary undertaking, specially obligated to perform the subject functions specifically for [claimants’] benefit” (Davis v Owens, 259 AD2d 272 [1st Dept 1999], lv denied 93 NY2d 810 [1999]).
“A special relationship can be formed in three ways: (1) when the [defendant] violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the [defendant] assumes positive direction and control in the face of a known, blatant and dangerous safety violation” (Pelaez v Seide, 2 NY3d 186, 199-200 [2004]).
The Court of Appeals, in Pelaez, explained (at 200):
“To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action. One may be fairly implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme ... If one of these prerequisites is lacking, the claim will fail.”
The Pelaez decision cautioned that “[w]hile the existence of a special relationship depends on the facts, a plaintiff has a heavy burden in establishing such a relationship” and, consequently, has “dismissed most such claims as a matter of law” (Pelaez, 2 NY3d 186, 199 n 8 [2004]).
Claimants allege that a statutory special relationship was formed by Education Law § 4403:
“The state education department shall have power and it shall be its duty: . . .
“4. To periodically inspect, report on the adequacy of and make recommendations concerning instructional programs or special services for all children with handicapping conditions who reside in or attend any state operated or state financed social service facilities, youth facilities, health facilities, mental health, mental retardation and developmental disabilities facilities or state correctional facilities . . .
“11. To promulgate regulations concerning standards for the protection of children in residential *321 care from abuse and maltreatment, including procedures for: . . .
“(e) removing a child when it is determined that there is risk to such child if he or she continues to remain within a residential facility or program.”
The statutory “duty” set forth in Education Law § 4403 does not create a special relationship between Antwone and defendant because the statute does not authorize a private cause of action by Antwone against defendant.
The statute does not expressly authorize a private cause of action. Indeed, the duties listed by claimant merely require the State Education Department to inspect and report on instructional programs for children with handicapping conditions and to promulgate regulations “concerning standards for the protection of children in residential care from abuse and maltreatment, including procedures for . . . removing a child when it is determined that there is risk to such child.” (Education Law § 4403 [11] [e].) There is no allegation that defendant failed to perform these duties, only that it performed them negligently.
The next inquiry is whether the statute implies a special duty. The statute certainly employs the word “duty” and directs the State Education Department to perform certain tasks. “A statutory command, however, does not necessarily carry with it a right of private enforcement by means of tort litigation” (Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 38 [1999]).
Applying the Pelaez test, it is clear that recognition of an implied private right of action for damages, if the statutory duty were breached, would not promote the legislative purpose of the governing statute. The manifest purpose of the statute is to provide for a free appropriate public education for children with handicapping conditions, and “to use all means and measures necessary to adequately meet the physical and educational needs of such children” (Education Law § 4403 [1]).
It is also clear that the Legislature intended to improve the educational experience of children with handicapping conditions by permitting the maximum amount of choice, flexibility and funding to educational decisionmakers, including the State Education Department and local school boards. Recognizing a private tort cause of action for damages against these decision-makers for negligence in exercising their discretion would not promote that goal.
It is also apparent that creation of a private tort right of action for violation of the statute would not be consistent with the *322 legislative scheme. The Legislature has recognized a federal judicial remedy and created a state administrative and judicial remedy for violation of Education Law § 4403 (see Education Law § 4404 [3] [a]). These remedies do not contemplate recovery of tort damages.
New York’s statutory plan for ensuring the appropriate education of children with handicapping conditions is inextricably linked with the federal Individuals with Disabilities Education Act (IDEA):
“The Individuals with Disabilities Education Act [20 USC § 1400 et seq.] provides for federal financial assistance to states with programs for the free education of handicapped children [20 USC § 1411], if the programs meet certain specified conditions as to educational opportunity, certain specified procedural safeguards, and procedures to assure that, to the maximum extent appropriate, handicapped children, including those in public and private institutions or other care facilities, are educated with children who are not handicapped” (94 NY Jur 2d, Schools, Universities and Colleges § 566).
Article 89 of the Education Law, which includes Education Law § 4403, is intended “to complement the Federal program [IDEA] and comply with its requirements (see, Education Law § 4401 et seq.)” (Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d 598, 603 [1992]). The Northeast decision explained (at 606-607):
“The policy goals underlying both the Federal and State statutes are broadly stated. The expressed congressional intent is to ‘assure that all children with disabilities have available to them ... a free appropriate public education ... to meet their unique needs’ (20 USC § 1400 [c]). The State, to implement the Federal program and further its expressed purpose, established an elaborate program, supplemented by regulations of the Commissioner, to identify qualifying students and their needs, to review annually the efficacy of the education provided to each student, and to work toward meeting the physical and educational needs of children with handicapping conditions (see, Education Law §§ 4402, 4403).”
In Polera v Board of Educ. of Newburgh Enlarged City School Dist. (288 F3d 478, 486 [2d Cir 2002]), the Second Circuit Court *323 of Appeals held that personal injury damages are not recoverable under the IDEA:
“The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy — as contrasted with reimbursement of expenses — is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA’S carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes. We therefore hold that monetary damages are not available under the IDEA.”
Education Law § 4403, like the IDEA, provides no private cause of action for damages. The claim fails to allege facts sufficient to demonstrate a cognizable legal duty running from defendant to Antwone, whether through a “special relationship” or otherwise, and therefore fails to state a claim.
The court also lacks subject matter jurisdiction over the claim. The claim alleges that defendant negligently placed JRC on its list of approved out-of-state private schools for students with disabilities funded pursuant to article 89 of the Education Law, negligently failed to regulate JRC, negligently failed to investigate JRC and negligently failed to enforce various state laws. Claimants challenge the discretionary administrative actions or inactions of a state agency. “The appropriate remedy for such a challenge is a CPLR article 78 proceeding” (Matter of Miller v State of New York, 283 AD2d 830, 831 [3d Dept 2001]).
With respect to enforcement of New York State laws or regulations, claimants allege that defendant has failed to perform a duty it was mandated to perform by law. Thus, the claim is in the nature of a mandamus to compel and such relief is available, if at all, only by way of an article 78 proceeding, commenced in Supreme Court (Matter of McCullough v State of New York, 278 AD2d 709 [3d Dept 2000], lv dismissed 96 NY2d 754 [2001], lv denied 96 NY2d 706 [2001]).
The jurisdiction of the Court of Claims is invoked where money damages are the essential object of the claim, unlike an instance where the principal claim is equitable in nature (such as to compel or review action by a state agency), with monetary relief being incidental to the principal claim (see Harvard Fin. *324 Servs. v State of New York, 266 AD2d 685, 685 [3d Dept 1999]; Matter of Gross v Perales, 72 NY2d 231, 236 [1988]).
In City of New York v State of New York (46 AD3d 1168, 1169 [3d Dept 2007]), the court explains:
“Two inquiries must be made to determine if the Court of Claims has subject matter jurisdiction. As that court has ‘no jurisdiction to grant strictly equitable relief (Psaty v Duryea, 306 NY 413, 416 [1954]), but may grant incidental equitable relief so long as the primary claim seeks to recover money damages in appropriation, contract or tort cases (see Ozanam Hall of Queens Nursing Home v State of New York, 241 AD2d 670, 671 [1997]), ‘the threshold question is “[w]hether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim” ’ (Madura v State of New York, 12 AD3d 759, 760 [2004], lv denied 4 NY3d 704 [2005], quoting Matter of Gross v Perales, 72 NY2d 231, 236 [1988]). The second inquiry, regardless of how a claimant categorizes a claim, is whether the claim would require review of an administrative agency’s determination — which the Court of Claims has no subject matter jurisdiction to entertain (see Hoffman v State of New York, 42 AD3d 641, 642 [2007]), as review of such determinations are properly brought only in Supreme Court in a CPLR article 78 proceeding (see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]).”
In order for this court to award claimants damages in this action, it would necessarily have to review the administrative and investigative determinations of the involved state agency which, as set forth above, it cannot do.
Significantly, claimants had available administrative and judicial remedies if either the IER or the JRC placement and program, were considered inadequate or inappropriate {see Education Law § 4404; 20 USC § 1415; 8 NYCRR 200.5).
With respect to the claimants’ cause of action alleging that defendant violated Antwone’s civil rights, it is well-settled that no cause of action for damages against the State of New York exists for an alleged violation of an individual’s rights under the United States Constitution since the State is not a “person” amenable to suit pursuant to 42 USC § 1983 {see Mat *325 ter of Gable Transp., Inc. v State of New York, 29 AD3d 1125 [3d Dept 2006]; Welch v State of New York, 286 AD2d 496, 498 [2d Dept 2001]; Zagarella v State of New York, 149 AD2d 503 [2d Dept 1989]; Davis v State of New York, 124 AD2d 420, 423 [3d Dept 1986]).
Although the Court of Appeals has recognized a cause of action for a state ‘ ‘ constitutional tort” in the Court of Claims (Brown v State of New York, 89 NY2d 172 [1996]), it has also acknowledged that a constitutional tort remedy will not be implied when an adequate alternative remedy exists (Augat v State of New York, 244 AD2d 835, 837 [3d Dept 1997], lv denied 91 NY2d 814 [1998]). Claimants could have raised any state constitutional claim in the context of an article 78 proceeding or declaratory judgment action in Supreme Court (see Bullard v State of New York, 307 AD2d 676 [3d Dept 2003]; Walton v New York State Dept. of Correctional Servs., 8 NY3d 186 [2007]).
As set forth above, claimants had available state and federal judicial remedies if either the IER or the JRC placement and program were considered inadequate or inappropriate. Claimants could also pursue judicial remedies against JRC and the local school district as well as the State of Massachusetts which approved of the JRC treatment plan both administratively and judicially.
More importantly, with respect to defendant’s alleged violation of Antwone’s civil rights, it is obvious that defendant engaged in no affirmative conduct detrimental to Antwone’s rights but merely provided a list of private school choices, and funding, from which Antwone’s mother and legal guardian, together with Antwone’s local school district, ultimately selected JRC as best serving Antwone’s interests. This choice was approved by the Massachusetts Department of Education and by the order, judgment and decree of the Massachusetts Probate and Family Court.
To the extent that the claim alleges defendant’s negligence in investigating JRC, it fails to state a cause of action. Despite claimants’ assertion that the defendant’s alleged acts and omissions were “intentional” in addition to “negligent,” it is clear that the claim alleges “negligent investigation . . . which is not actionable in New York” (Russ v State Empls. Fed. Credit Union [SEFCU], 298 AD2d 791, 793 [3d Dept 2002]; see McWilliams v New York City Commn. on Human Rights, 239 AD2d 105 [1st Dept 1997]).
*326 For all of the foregoing reasons, the defendant’s motion for summary judgment dismissing the claim is granted. The claim is dismissed.