■ In the Matter of ORRA WOOD, Petitioner, v DAVID AXELROD, as Commissioner of the New York State Department of Health, Respondent. [610 NYS2d 332] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Appellate Division, Second Department), to review a determination of respondent which, inter alia, directed petitioner to cease and desist from operating a nursing home without approval of the Public Health Council.

Petitioner is the owner of a Victorian-style residence at 34 Webb Road in the City of Middletown, Orange County (hereinafter the residence). In September 1990, four investigators from the State Department of Health went to the residence to investigate a report that petitioner was operating a nursing home without approval of the Public Health Council. The investigators evaluated the residents' medical conditions, determined that three of the five residents qualified for skilled nursing home care and concluded that petitioner was providing nursing care. In addition, it was found that the residence was in violation of fire safety codes for nursing homes.

In October 1990 respondent issued an order for summary action, requiring the immediate closure of the residence and transfer of the residents to different facilities. Following an administrative hearing, respondent adopted the finding that petitioner had been operating a nursing home as defined in 10

---

NYCRR former 414.1 (a) (3)[1] without approval. Respondent implemented the recommendation of the Administrative Law Judge (hereinafter ALJ) that an order be issued directing petitioner to cease and desist from operating, together with the payment of a $2,500 civil penalty. Petitioner contends that respondent's determination was erroneous as a matter of law and not supported by substantial evidence.

Public Health Law § 2801-a (1) states that "[n]o hospital * * * shall be established except with the written approval of the public health council". As defined in Public Health Law § 2801 (1), the term hospital includes nursing home, which is itself defined in subdivision (2) of that section as: "a facility providing therein nursing care to sick, invalid, infirm, disabled or convalescent persons in addition to lodging and board or health-related service, or any combination of the foregoing, and in addition thereto, providing nursing care and health-related service, or either of them, to persons who are not occupants of the facility." "Nursing home" was further defined in 10 NYCRR former 414.1 (a) (3) as a facility that provided "by or under the supervision of a physician, nursing care and other * * * health-related * * * services * * * for 24 or more consecutive hours to three or more nursing home patients".[2] 10 NYCRR former 414.1 (c) (11) defined "nursing home patient" as a person: "(i) diagnosed by a physician as having one or more clinically determined illnesses or conditions that cause the person to be so incapacitated, sick, invalid, infirm, disabled or convalescent as to require at least medical and nursing care; and (ii) whose assessed health care needs, in the professional judgment of his physician or a medical team: (a) do not require care or active treatment of the patient in a general or special hospital * * * (b) cannot be met satisfactorily in the person's own home or home substitute * * * and (c) cannot be met satisfactorily in a physician's office * * * or other ambulatory care setting". "Nursing" is not defined in the Department of Health regulations, but it is defined in Education Law § 6902 (1) as "diagnosing and treat-

---

1. Any charges that petitioner was operating a health-related facility were dismissed by the Administrative Law Judge on motion of petitioner based on proof that there were never six or more residents at the residence during the period in question. Accordingly, the only issue is whether petitioner was operating a nursing home at that time.

2. Subsequent to the summary closure of petitioner's residence, the regulations relating to nursing homes (10 NYCRR 414.1-414.18) were repealed and new regulations (10 NYCRR 415.1-415.38) were added. Accordingly, we apply the regulations as they existed at the time of the summary order.

ing human responses to actual or potential health problems through such services as * * * provision of care supportive to or restorative of life and well-being, and executing medical regimens prescribed by a * * * physician".

One of the investigators, a physician, opined that petitioner's combined actions in dispensing medicine and washing the residents to prevent infection and promote recovery from certain conditions was nursing care. He testified, however, that these activities could be performed by nonmedical persons. He further testified that all of the residents appeared to be well cared for and did not require any immediate medical attention. Petitioner, a registered nurse, also testified that her actions did not require a nursing license. Other than these activities, there was no other evidence of nursing care or services being performed by petitioner or any of her employees. There were no special equipment or appliances, nor evidence of infusions or transfusions. No medical or nursing records were maintained.

We find respondent's construction of the term "nursing" under these circumstances to be at odds with the type of specialized medical care contemplated in the statutory definition of nursing. In this instance, we cannot uphold respondent's construction of the statutory definition of nursing because it is irrational (cf., Matter of John v New York State Ethics Commn., 178 AD2d 51, 55, lv denied 80 NY2d 753).

Furthermore, under respondent's former regulation, a nursing home was a facility providing care by or under the supervision of a physician (see, 10 NYCRR former 414.1 [a] [3]).[3] Another of the investigators testified that during the period in question, there was no physician supervising the care of the residents at the residence. Instead, the subject residents were under the care and treatment of their personal physicians, who prescribed the medications that they received. In addition, the record contains no proof that the residents could not be cared for in a home setting (see, 10 NYCRR former 414.1 [c] [11]). Respondent's implicit findings that petitioner provided "nursing care" to "nursing home patients" under the former regulation lacks a rational basis in the record. Thus, respondent's determination that petitioner operated a nursing home without approval of the Public Health Council is not supported by substantial evidence and must be annulled (see, 300 Gramatan Ave. Assocs. v State Div. of

---

3. This requirement was eliminated in the new regulation defining nursing home (see, 10 NYCRR 415.2 [k]).

*Human Rights,* 45 NY2d 176; *Matter of Pell v Board of Educ.,* 34 NY2d 222).

Mikoll, Weiss and Peters, JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.