■ NEW YORK COALITION FOR QUALITY ASSISTED LIVING, INC., et al., Appellants, v ANTONIA C. NOVELLO, as Commissioner of Health, Respondent. [861 NYS2d 857]—

---

Mercure, J.P. Appeal from a judgment of the Supreme Court (Lamont, J.), entered May 14, 2007 in Albany County, which, among other things, granted defendant's motion for summary judgment dismissing the complaint.

Plaintiffs, which are adult homes,* an association representing the interests of adult homes and an association representing registered nurses, commenced this declaratory judgment action challenging defendant's promulgated regulation regarding assistance with the self-administration of medication (*see* 18 NYCRR 487.7 [f]) and a "Dear Administrator Letter" (hereinafter DAL) that defendant issued in January 2005 interpreting the regulation. Plaintiffs maintain that the regulation and DAL require them to administer medication—as opposed to merely assist with self-administration by, for example, reading labels on medications and opening bottles—and thereby provide nursing services through unlicensed staff. The parties cross-moved for summary judgment, and Supreme Court granted defendant's motion and dismissed the complaint. Plaintiffs appeal and we now affirm.

Initially, we reject plaintiffs' argument that Supreme Court improperly dismissed their third and fourth causes of action, which challenged the January 2005 DAL, as untimely. "Whether

---

* Adult care facilities, including adult homes, provide "residential care and services to adults who, though *not requiring continual medical or nursing care* . . . are by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, unable or substantially unable to live independently" (Social Services Law § 2 [21] [emphasis added]; *see* 18 NYCRR 487.4 [b] [1], [6], [7]).

[those] claims are subject to the four-month statute of limitations period under CPLR article 78 or the residuary six-year limitations period of CPLR 213 (1) turns on whether the parties' rights could have been resolved in an article 78 proceeding" (*Walton v New York State Dept. of Correctional Servs.*, 8 NY3d 186, 194 [2007]; *see New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 200-201 [1994]). Inasmuch as plaintiff's challenges to the DAL, an interpretive statement that is merely explanatory, could be resolved in a CPLR article 78 proceeding, a four-month statute of limitations is applicable (*see Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 279-280 [2003]; *see also New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d at 203-204; *Federation of Mental Health Ctrs. v DeBuono*, 275 AD2d 557, 559-560 [2000]). Moreover, the DAL became "final and binding" within the meaning of CPLR 217 (1) when defendant "reached a definitive position on the issue that inflict[ed] actual, concrete injury . . . [which could] not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]; *accord Walton v New York State Dept. of Correctional Servs.*, 8 NY3d at 194). The DAL, which arose from discussions with the primary association of adult care facilities in the state, the Empire State Association of Adult Home Assisted Living Facilities, was mailed to plaintiffs in January 2005, and plaintiffs were directed to take corrective action in accordance with the DAL as early as May 2005. Thus, at the latest, the statute of limitations began to run in May 2005, and the third and fourth causes of action in this May 2006 action were properly dismissed as untimely (*see Matter of Delta Kappa Epsilon [DKE] Alumni Corp. v Colgate Univ.*, 38 AD3d 1041, 1042 [2007]; *Matter of New York State Rehabilitation Assn. v State of N.Y., Off. of Mental Retardation & Dev. Disabilities*, 237 AD2d 718, 720-721 [1997]).

Turning to the merits, adult homes must provide their residents with personal care necessary to maintain personal hygiene and health, and to permit participation in the activities of daily living, including assistance with grooming, dressing, bathing, toileting, eating and self-administration of medications (*see* 18 NYCRR 487.7 [e]). The provision of defendant's regulations at issue indicates that adult home residents are capable of self-administration of medication if they can complete seven tasks: correctly read medication labels; correctly interpret those labels; correctly ingest, inject or apply medications; correctly follow instructions on route, time, dosage and frequency; open medication containers; measure or prepare medications; and

safely store medications (18 NYCRR 487.7 [f] [2]). The regulation mandates that adult homes assist residents who are unable to perform any of the seven routine tasks, and establish a system for staff to provide residents with proper dosage at designated times, observe that residents have taken medication, record residents' medication regimens and any assistance given to them, and securely store medication (see 18 NYCRR 487.7 [f] [3]-[12]). Adult home staff may not perform tasks requiring the exercise of medical judgment, including the injection of medication or determining when to administer prescribed-as-needed medications (see 18 NYCRR 487.7 [f] [7], [9]), and must notify a resident's physician if a resident is unable or refuses to independently administer medication (see 18 NYCRR 487.7 [f] [8]).

Plaintiffs assert that this regulatory scheme violates the Nurse Practice Act because it requires them to engage in the practice of nursing, defined in Education Law § 6902 (1) as involving, among other things, "diagnosing and treating human responses to actual or potential health problems through such services as . . . executing medical regimens prescribed by a licensed physician." Plaintiffs also contend that by deeming assistance with self-administration of medication to be a personal care service, rather than a nursing service, defendant improperly denies funding for nursing services in violation of the Medicaid Act. As defendant demonstrated, however, the tasks enumerated in 18 NYCRR 487.7 (f) (2) do not require the exercise of medical judgment; rather, they are "activit[ies] which the resident would ordinarily be capable of carrying out" (18 NYCRR 487.7 [f] [4])—i.e., tasks that the individuals would have carried out for themselves or with the assistance of another unlicensed person, as opposed to services that would ordinarily be provided by a nurse or physician. In our view, defendant rationally determined, as reflected in the regulations, that a nurse is not required to be present simply to open a medication bottle, for example, because an individual's mental capacity does not transform such perfunctory assistance into the administration of medicine. Moreover, as Supreme Court noted, assistance with following instructions for taking medications and storing those medications is no more complex than other services adult homes are obligated to provide, such as performance of basic money management (see 18 NYCRR 487.7 [d] [1] [iv] [d]). Accordingly, because the routine tasks set forth in the regulation do not constitute "the type of specialized medical care contemplated in the statutory definition of nursing" (Matter of Wood v Axelrod, 203 AD2d 645, 647 [1994]; cf. Superior Care v Zuppardi, 87 AD2d 627, 628 [1982]), it cannot be said that the regulatory scheme is arbitrary and capricious or violative of either the Nurse Practice

Act or the Medicaid Act, and Supreme Court properly dismissed the complaint in its entirety.

Plaintiffs' remaining arguments have been rendered academic by our determination.

Rose, Kane, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.