OPINION OF THE COURT
Denise A. Hartman, J.
Petitioners Christopher A. Cole and Rehabilitation Support Services, Inc. (RSS) commenced this CPLR article 78 proceeding to challenge a determination of the Town of Esopus Zoning Board of Appeals that a proposed group residence that would provide residential and other support services for up to 16 women who will have been treated for substance abuse and are transitioning into the community does not meet the definition of a one-family dwelling and is instead a convalescent home as those terms are used in the Town’s Zoning Code.
*384 The court acknowledges the value of RSS’s efforts to establish a community residence to support the transition of recovering substance abusers into the community. But petitioners have not demonstrated that the Zoning Board of Appeals’ determination that the proposed community residence is not a single family dwelling is arbitrary and capricious or unlawfully discriminatory. On the other hand, the court finds that the Zoning Board of Appeals’ determination that the proposed facility is a convalescent home is arbitrary and capricious. The court, therefore, denies respondents’ motion, denies the petition in part, and grants the petition in part.
Background
Petitioner Cole owns approximately two acres of real property in Port Ewen, Town of Esopus, within the Town’s R-12 “Moderate Intensity/Hamlet Residential” zoning district. The R-12 district is zoned for residential housing and allows as of right single family dwelling units. RSS, a not-for-profit mental health and rehabilitation agency, has contracted with petitioner Cole to purchase the subject property to build what at various times has been called a “community residence,” “halfway house,” or “sober living residence” for women transitioning from treatment programs into the community.
In June 2008, the County of Ulster awarded RSS a contract to establish a community residence regulated and licensed by the New York State Office of Alcoholism and Substance Abuse Services (OASAS) pursuant to Mental Hygiene Law article 19 and 14 NYCRR parts 814 and 815. RSS was to establish a community residence that would provide “supervised services to persons making the transition to abstinent living” and who “are completing or have completed a course of treatment, but who are not yet ready for independent living due to outstanding clinical issues or unmet needs for personal, social or vocational skills development” (14 NYCRR 819.2 [a] [2]). In its response to the request for proposals, RSS described its intent to provide “congregate housing within a tobacco and drug-free environment that will offer treatment and support services to women, many with co-occurring chemical dependency and mental health issues.” RSS further stated that the residence “will be staffed 24/7 with double coverage evenings and weekends [by] a combination of professionals . . . and paraprofessionals.” At a similar residence owned and operated by RSS, the residents stay for an average of four to six months, but some individuals stay for only two months and others may stay *385 nine months. The residents must pay rent to RSS; rental proceeds are supplemented by governmental funding.
RSS identified the Cole property as a suitable locale for the community residence. The floor plans for the proposed residence show that it will have 7,300 square feet of living space on two floors. The first floor will be comprised of a common living area, kitchen and dining area, as well as specific rooms for the provision of support services, including office space for staff, rooms for on-site counseling, a “meds room,” and a staff bathroom. The second floor will consist principally of double-occupancy bedrooms that will accommodate 16 beds, a dormitory-style bathroom with two or more toilets and showers, and a storage area. The parking lot is designed to accommodate up to 12 parking spaces; residents will be able to leave the premises under a pass system.
The Town’s Zoning Code authorizes requests for interpretations of its provisions (Esopus Town Code § 123-42). In May 2015, RSS submitted an application for an interpretation of the Code’s provisions relating to its proposal to build and operate the community residence on petitioner Cole’s property. On May 12, 2015 the Town’s zoning enforcement officer opined that the proposed residence would constitute a one-family dwelling within the meaning of the Zoning Code and would not need a special use permit or site plan approval. On June 15, 2015, the zoning enforcement officer withdrew his opinion, stating that pursuant to information provided by the Town’s counsel, RSS’s proposed project required further review and that RSS needed to submit a proposed site plan.
On August 3, 2015, RSS formally renewed its request for an interpretation that its proposed 16-bed “sober living residence” constitutes a one-family dwelling within the meaning of the Zoning Code. On August 10, 2015, the zoning enforcement officer issued a second letter, this time expressing his view that the proposed facility is a “convalescent home,” excluded from the Zoning Code’s definition of “dwelling unit” and included instead within the definition of “nursing or personal care facilities,” which are not permitted in an R-12 district. In September 2015, petitioners appealed to the Town’s Zoning Board of Appeals (ZBA) and in October 2016, RSS appeared before the ZBA to support its position. The ZBA held public hearings in November and December of 2015.
The ZBA determined that RSS’s proposed sober living residence is not a one-family dwelling permitted as of right in an *386 R-12 district. Its resolution dated February 16, 2016 incorporated a statement of findings concerning the average stay for individual residents, the professional support services to be provided at the residence, and the size and layout of the residence. It concluded that “the proposed facility will provide accommodations for transients, for a fee (rent) and will also provide on-site staff who will be engaged in activities at the residence that involve tasks and work that is more complex than just housekeeping and facility maintenance.” The ZBA made observations about RSS’s larger mission and a similar facility in Saugerties, which is not classified as a single-family residence, and it noted the objections of neighboring residents expressed at the public hearings. Ultimately, the ZBA determined that “the above features of the facility’s operations and physical plant are not consistent with the customary operation and layout of a typical one family dwelling,” and are “not compatible, in terms of its size and operating characteristics, with the predominately one family dwellings that surround the” proposed parcel. Finally, the ZBA stated that it deferred to the opinion of the zoning enforcement officer that the proposed facility is a “convalescent home” within the category of “Nursing and personal care facilities” not permitted in the R-12 district.
In June 2016, petitioners commenced this CPLR article 78 proceeding to challenge the ZBA’s determination as arbitrary and capricious and unlawfully discriminatory. Respondents provided a certified record of the Zoning Board of Appeals’ administrative proceedings and moved to dismiss the petition. Respondents argue, among other things, failure to exhaust administrative remedies and failure to state a cause of action inasmuch as the ZBA’s determination is not arbitrary, capricious or otherwise unlawful. The court denied respondents’ motion to change venue to Ulster County on September 8, 2016, and heard oral argument on September 23, 2016.
Legal Standard
Initially, the court rejects respondents’ argument that the petition must be dismissed on the ground that petitioners failed to exhaust their administrative remedies. The “requirement that a landowner must seek a variance” or apply for a special use permit “to exhaust administrative remedies is applicable to controversies over whether zoning regulations are confiscatory and therefore unconstitutional as applied to a landowner’s property”; resort to such administrative remedies is generally not required where petitioners challenge a determination about *387 whether a use is permitted as of right (Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent, 65 AD3d 154, 157 n 1 [2d Dept 2009]; see e.g. Matter of Lavender v Zoning Bd. of Appeals of the Town of Bolton, 141 AD3d 970 [3d Dept 2016], appeal dismissed 28 NY3d 1051 [2016]; Matter of Meier v Village of Champlain Zoning Bd. of Appeals, 129 AD3d 1364 [3d Dept 2015]).
Turning to the merits, the “[c]ourts should only overturn an action by a zoning board of appeals if the action was arbitrary, capricious, illegal, [or] irrational” (Matter of Salton v Town of Mayfield Zoning Bd. of Appeals, 116 AD3d 1113, 1113-1114 [3d Dept 2014]; see Matter of Sullivan v Board of Zoning Appeals of City of Albany, 144 AD3d 1480, 1482-1483 [3d Dept 2016]; Matter of Lavender, 141 AD3d at 972). The interpretation by a zoning board of appeals of an ambiguous zoning law is entitled to deference, but no deference is required if the question involves the pure legal interpretation of an ordinance (Matter of Sullivan at 1482; Matter of Lavender, 141 AD3d at 972; Matter of Salton, 116 AD3d at 1114). If an ordinance “does not define a particular term, courts will afford [it] its plain [and] ordinary meaning” (.Matter of Sullivan at 1482; see Matter of Albany Basketball & Sports Corp. v City of Albany, 116 AD3d 1135, 1138 [3d Dept 2014], lv denied 23 NY3d 907 [2014]). And finally, zoning regulations must be strictly construed against the enacting municipality and ambiguity must be resolved in favor of the property owner (Matter of Salton, 116 AD3d at 1114; Matter of Lavender, 141 AD3d at 972).
Analysis
The court must address two questions raised by the petition. The first question is whether the ZBA irrationally or illegally determined that the proposed community residence is not a “one-family dwelling” permitted as of right in the R-12 district under the Town’s Zoning Code. The second question is whether the ZBA irrationally or illegally determined that the proposed community residence is a “convalescent home” which is not permitted in the R-12 district, even with a special use permit. One-Family Dwelling Determination
The Zoning Code of the Town of Esopus describes the purpose of the R-12 district as follows:
“R-12 Moderate Density/Hamlet Residential District. The Moderate Density/Hamlet Residential District has been established to regulate develop *388 ment in two distinct categories of town: the areas in and around Port Ewen developed within the water and sewer districts and the rural hamlet areas in the southern part of Town which were developed at a higher density than the surrounding area but which lack central utilities. To reflect the varied utility services in this district, development density is based on a sliding scale, geared [toward] the availability of central water and/or sewer service ranging from 1/3 of an acre to one acre per dwelling unit. Two-family homes are also permitted and multifamily housing is permitted under certain conditions” (Esopus Town Code § 123-6 [D]).
The schedule of permitted uses lists “one-family dwelling” as a use permitted as of right. It lists other uses, such as two-family dwellings and multifamily residences as permissible with a conditional use permit, but excludes “nursing and personal care facilities.”
The Town’s Zoning Code defines “Dwelling unit” as follows:
“A building or entirely self-contained portion thereof designed for occupancy by only one family (including any domestic staff employed on the premises) and having complete cooking, sanitary and sleeping facilities for the exclusive use of the occupants of the dwelling unit. A boardinghouse, convalescent home, dormitory, fraternity or sorority house, hotel, inn, lodging or rooming house, nursing or other similar home or other similar structure shall not be deemed to constitute a dwelling unit” (Esopus Town Code § 123-61).
“Dwelling, One-Family” in turn is defined as “[a] detached building containing only one dwelling unit” {id.). The Town’s Zoning Code does not define the word “Family,” but as the Appellate Division, Third Department has observed, the definition “is readily ascertainable” from zoning case law to mean not only the biological or traditional family, but also a group of unrelated individuals who live as “the functional equivalent of a traditional family” (see Matter of Morrissey v Apostol, 75 AD3d 993, 996 [3d Dept 2010], citing among other cases Village of Belle Terre v Boraas, 416 US 1 [1974], and McMinn v Town of Oyster Bay, 66 NY2d 544 [1985]).
The first question—whether the proposed community residence is a one-family dwelling—is fact-bound, and the ZBA’s determination is entitled to deference. RSS has not dem *389 onstrated that the ZBA’s determination that the proposed residence is not a one-family dwelling is arbitrary and capricious. The ZBA considered the size and physical layout of the proposed residence, the services and treatments to be provided there, and the transience of the average resident. While no one of these factors alone may be determinative, considering them in their totality, the ZBA could reasonably determine that the proposed community residence is not a one-family dwelling within the meaning of its Zoning Code.
First, the ZBA considered the proposed physical layout of the proposed facility: 7,300 square feet of space—more than three times the size of the average single family dwelling in the community; at least eight bedrooms accommodating 16 beds and an upstairs bathroom that is dormitory-style with multiple toilets and shower stalls; downstairs space that includes not only common areas, but at least three rooms for office space and counseling and treatment activities, a room for dispensing medications, and a bathroom for staff only; storage areas for office records and residents’ possessions; and a parking lot that will accommodate up to 12 cars. The size of the proposed community residence and its physical layout reasonably distinguish it from common one-family dwellings.
Second, the ZBA considered the operational characteristics of the community residence. The facility will be one that is licensed and regulated by OASAS to provide support to individuals who have received or are receiving treatment for chemical dependency and to assist in their transition to the community (see Mental Hygiene Law §§ 19.07, 19.09, 19.40, 31.07, 32.01). It will be staffed around the clock by professionals and paraprofessionals who will supervise and provide services for the residents, including individual and group counseling and distribution of medications. The staff will not provide nursing services in a strict sense, but they will provide professional and paraprofessional services, including therapeutic counseling, to help the residents develop their personal, social, and vocational skills. The fact that RSS must, pursuant to its contract with OASAS and regulations, provide around-the-clock services and supervision, distinguishes the operational dynamics of the proposed community residence from the common one-family dwelling.
Third, the ZBA considered the characteristics and transience of the residents themselves. The very purpose of the proposed facility is to provide transitional support. For the most part, the adult residents of the proposed facility will have had no *390 prior relationships with each other. They will stay at the residence for an average of five to eight months. While the floor plans show common kitchen and living areas, the relatively short duration of the average residency undercuts RSS’s assertion that the residents will form stable, interdependent relationships such that they will live as the functional equivalent of a family.
The community residence in this case is unlike the group homes in cases where the courts have found that biologically and legally unrelated individuals were the functional equivalent of a family. In City of White Plains v Ferraioli (34 NY2d 300 [1974]), the Court of Appeals held that a group home of two parents, two children, and 10 foster children were the functional equivalent of a stable family occupying a single family home. In Group House of Port Washington v Board of Zoning & Appeals of Town of N. Hempstead, the Court likewise held that a group home occupied by two surrogate parents and seven children who had difficulty living with their natural families constituted the functional equivalent of a family, even though the surrogate parents would sometimes be relieved by temporary replacements and the children were to receive some counseling (45 NY2d 266 [1978]). And in Baer v Town of Brookhaven, the Court held that the Town could not apply a zoning ordinance to determine that a group of five elderly women were not the functional equivalent of a traditional family merely because of the number of unrelated persons, where no numerical limit was placed on traditional families (73 NY2d 942 [1989]). In a fourth case, Matter of Gabriel v New Rochelle Bd. of Appeals on Zoning, the Second Department upheld a zoning determination that a 22-bed residence for an order of religious brothers who shared common living, cooking and dining areas was a single family residence (139 AD2d 740 [2d Dept 1988]). In each of these cases, the unrelated residents were living interdependently in relatively stable relationships as a traditional family sharing household activities and responsibilities.
In contrast, the courts have upheld zoning determinations that group homes do not constitute single family residences where adults resided together in transient or transitional circumstances. For example, in Matter of Libolt v Town of Irondequoit Zoning Bd. of Appeals (66 AD3d 1393 [4th Dept 2009]), the Court upheld a zoning determination that a group home to help men who had been convicted of nonviolent drug or substance related crimes transition to the community was not *391 a single family residence under the zoning code. And in Matter of Morrissey, the Third Department upheld a zoning ordinance that imposed a presumption that a residence containing more than four unrelated college students is not a single family residence unless they could show they lived together as the functional equivalent of a family (75 AD3d 993). In this case, given the totality of circumstances, the ZBA could reasonably determine that RSS did not demonstrate that an ever-changing mix of 16 individuals living for approximately six months in a 7,300 square foot residence and receiving professional supervision services to help them integrate into the community will constitute the functional equivalent of a family.
Convalescent Home Determination
The court must next address the question whether the ZBA’s determination that the proposed facility is a “convalescent home” that falls within the broader term “Nursing and personal care facilities,” because if it does, the proposed facility cannot be established in the R-12 district even by special permit. The question whether the proposed facility is a “convalescent home” is primarily a question of law, not unlike the question before the Third Department in Matter of Sullivan—whether the proposed residence for homeless individuals was a house of worship under the City of Albany’s Zoning Code.
The Town’s Zoning Code defines “Skilled Nursing Home or Convalescent Home” as “[a] facility operated for the purpose of providing lodging, board and nursing care to sick, invalid, infirm, disabled or convalescent persons for remuneration” (Esopus Town Code § 123-61 [emphasis added]). In addition, the schedule of permitted uses appended to the Town’s Zoning Code identifies “Nursing and personal care facilities” under the 1987 edition of the Occupational Safety and Health Administration’s Standard Industrial Classification (SIC) Manual as “805.” The Town’s Zoning Code states, “In the case of a question or interpretation as to the classification of a particular use, the definitions and categories used in the SIC Manual shall prevail, unless otherwise specifically defined” in the Code (§ 123-10 [B]). SIC 805 includes skilled nursing facilities, “convalescent homes with continuous nursing care,” intermediate care facilities that are “primarily engaged in providing inpatient nursing and rehabilitative services, but not on a continuous basis,” and other nursing and personal care facilities “primarily engaged in providing some nursing/or health-related care to patients who do not require the degree of care” provided by a skilled or intermediate care facility but who need some nursing care, *392 “including the administration of medications” ordered by a physician.
But as RSS correctly argues, there is no evidence that RSS will be providing nursing care to the residents. While credentialed professional and paraprofessional staff will be required to provide services to the residents, the record shows that those services will entail supervision, substance abuse and other supportive counseling, assistance in securing outpatient medical services and other social services, vocational services, and transportation to and from appointments (see 14 NYCRR 819.2 [a] [2]; [e]). The residents will already have undergone intensive medical treatment for substance abuse at a different facility before being transferred to RSS’s proposed transitional facility.
It is true that the record shows that RSS will include a “meds room” in the proposed facility, and staff will dispense previously prescribed medications to the residents as part of their effort to help residents develop a routine that will allow them to function independently in the community. There is nothing in the record, however, to show that nursing staff is required to dispense such medications, and the parties have pointed to no statute or regulation that requires licensed nursing services dispense them (cf. New York Coalition for Quality Assisted Living, Inc. v Novello, 53 AD3d 914, 917 [3d Dept 2008] [assistance with medication does “not constitute the type of specialized medical care contemplated in the statutory definition of nursing” (internal quotation marks omitted)], lv denied 11 NY3d 715 [2009]; Education Law § 6908). The court finds, therefore, that while RSS’s proposed facility will clearly be in the nature of an assisted living residential facility, the determination that it is a convalescent home, which by definition provides nursing services, is arbitrary and capricious. Discrimination on the Basis of Disability
Petitioners argue that the ZBA’s determination is arbitrary and capricious and illegal because it effectively results in a violation of federal anti-discrimination laws. In Oxford House, Inc. v Town of Babylon, upon which petitioners primarily rely, the Federal District Court held that the town violated the Fair Housing Act (42 USC § 3601 et seq.) when it attempted to evict a group of men who were recovering from drug or alcohol addiction and were living together in an “Oxford House” group home on the ground that it did not constitute a single family residence (819 F Supp 1179 [ED NY 1993]). The *393 court described the “[t]hree basic rules [that] guide the functioning of all Oxford Houses: (1) they must be democratically self-governed; (2) they must be financially self-supporting; and (3) any person[s] using drugs or alcohol must be immediately expelled” (819 F Supp at 1181). The court gave no description of the size of the residence or the average duration of residency (noting merely that it was unpredictable) (id. at 1183). On these facts, the District Court rejected the town’s view that the residents were not living as the functional equivalent of a family based on the size and transient nature of the group living arrangement, and held that the application of those factors to Oxford House-type group homes would have a disproportionate discriminatory impact on individuals in addiction recovery in violation of the Fair Housing Act without furthering the town’s legitimate zoning interests (id.).
The facts regarding the proposed community residence in this case are different, however. RSS’s proposed residence will be neither self-governed nor self-supporting. Trained staff will, among other things, supervise the residents around the clock, engage in counseling, and distribute medications. The duration of residency will not merely be “unpredictable”; it is expected to be transient, on the order of months. And as respondents point out, there are other zoning districts within the Town where this type of facility is permitted as of right or by special permit. If the proposed facility were smaller, housing fewer people and requiring fewer parking spaces, or if it were un-staffed or less supervised, or if the duration of the stay were less transitional, a different conclusion might be reached. But considering all of these facts, the court does not find respondents’ determination that the proposed community residence is not a one-family dwelling violative of federal anti-discrimination laws.
The parties have just brought to this court’s attention the decision of the United States District Court for the Northern District of New York, dated December 8, 2016, dismissing in part RSS’s federal complaint that respondents’ treatment of their application to build the community residence discriminated against disabled individuals in violation of the Fair Housing Act and the Americans with Disabilities Act (Rehabilitation Support Services v Town of Esopus, 226 F Supp 3d 113 [ND NY 2016]).
Consonant with this court’s decision, the District Court dismissed as unripe for review RSS’s claim that the ZBA’s de *394 termination that the proposed residence is not a one-family residence violates the Fair Housing Act and Americans with Disabilities Act. The court reasoned that RSS had not exhausted all opportunities for obtaining approval of the proposed community residence (226 F Supp 3d at 126). Notably, however, in dismissing the challenge to the ZBA’s determination, the District Court stated in dictum that it was “skeptical regarding how [RSS’s] proposed residence could be deemed to be a ‘convalescent home’ without the provision of nursing care” (226 F Supp 3d at 126-127).’ The District Court’s skepticism accords with this court’s conclusion that the ZBA’s determination that the proposed residence is a convalescent home is arbitrary and capricious.
Accordingly, it is ordered that respondents’ motion to dismiss the petition is denied; and it is ordered that the petition is denied in part to the extent that it seeks annulment of the Zoning Board of Appeals’ determination that the proposed community residence is not a one-family dwelling as arbitrary and capricious or unlawfully discriminatory; and it is ordered that the petition is granted in part to the extent that it seeks annulment of the Zoning Board of Appeals’ determination that the proposed facility is a convalescent home as arbitrary and capricious.

 While the District Court dismissed the challenge to the ZBA’s determination as unripe, it refused to dismiss at the pleadings stage RSS’s facial challenge to the Town’s Zoning Code (226 F Supp 3d at 128). The District Court held that RSS stated a plausible claim of discrimination that the Eso-pus Town Code excludes “convalescent homes” for certain disabled individuals from the R-12 district while permitting residences for similarly situated individuals pursuant to a special use permit (226 F Supp 3d at 129-130). RSS does not bring a facial discrimination claim in this article 78 proceeding. In any event, this court’s holding that respondents’ determination that the proposed community residence is a convalescent home is arbitrary and capricious would appear to obviate any such discrimination claim.